**April M. LONG, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–9511–CR–367.

Court of Appeals of Indiana.

June 12, 1996.

James A. Kornblum, Lockyear & Kornblum, Mark A. Foster, Evansville, for Appellant.

Pamela Carter, Attorney General of Indiana, Geoffrey Slaughter, Deputy Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

April M. Long brings this permissive interlocutory appeal[1] from the trial court's denial of her motion to dismiss the Public Indecency charges brought against her pursuant to Indiana Code § 35-45-4-1. Long, a nude dancer, does not dispute that she was performing in the nude. Rather, she contends that Regina's House of Dolls ("Regina's"), the establishment in which she was arrested, is not a public place as required by the public indecency statute.

We affirm.[2]

### ISSUE

The sole issue presented for our review is whether Regina's is a public place for purposes of the public indecency statute.

### FACTS

On May 26, 1995, Long was arrested and charged with public indecency after police officers observed her dancing completely nude on stage at Regina's in Evansville. Regina's is an alcohol-free club, open to persons eighteen years or older and is located in a solid concrete and brick building without windows. The club advertises in the local newspapers, *The Evansville Courier* and *The Evansville Press*. These newspapers are of general circulation and Regina's advertisements typically include a photograph of the featured dancer as well as other information about the dancer. Regina's also advertises on two large lighted street signs which notify the public of the club's location and allude to the type of entertainment provided within the club.

To enter Regina's, an individual must pass through two sets of doors. The first set are double glass doors which open into a foyer area and have "Regina's" painted across them. The second set opens into the club. The club itself consists of a large dance hall, including a stage where the dancers perform so that their nudity is visible to all persons within the club. Regina's also has a separate, more private area where for a fee, a customer may have his picture taken with a dancer sitting on his lap or he may sit on a sofa and watch the dancer's performance.

Regina's is owned by Night Clubs, Inc., a Kentucky corporation, and is managed by Dana R. Wilbanks ("Rex"). Since Wilbanks became the manager, he has required all individuals desiring admittance to Regina's to complete a membership card and, on some occasions, a membership application form. Applications for membership are completed in the club's foyer. Members must be at least eighteen years of age and must pay a $1.00 membership fee. The membership card provides the member's name and social security number or driver's license number. Neither the membership card nor the application form contains the member's address or telephone number. The back of the card states:

> By joining this private club, I am exercising my right to view adult entertainment in an environment of privacy the same as I would in my own home away from those who might not choose to view adult entertainment. I also, duly swear, that I am not any law enforcement agent for the State, County or Federal Government.

The club's policy is to require a person seeking admittance to present both his membership card and other identification and pay a $5.00 cover charge for each visit.

On May 26, 1995, undercover Evansville police officers Tooley and Hurt visited Regina's. Officer Tooley had been in the club on more than six occasions before he was required to purchase or prove membership. Officer Hurt obtained his membership card on May 13, 1995, and was asked to show that card when he visited the club on his two later visits. The Officers were admitted to the

---

1. Indiana Appellate Rule 4(B)(6).

2. We heard oral argument on May 9, 1996, in the Dubois Circuit Court in Jasper.

club on May 26, 1995, after which they observed Long dancing nude on the stage. They arrested and charged Long with public indecency. Long subsequently moved to dismiss the charge. After making thorough findings, the trial court denied the motion. Long now appeals.

## DISCUSSION AND DECISION

██ Long asserts that the trial court erred when it denied her motion to dismiss the public indecency charge. Specifically, Long asserts that Regina's is not a public place as required by the public indecency statute. We disagree.

Public indecency is defined by Indiana Code § 35–45–4–1(a), which provides in relevant part:

(a) A person who knowingly or intentionally, in a public place:

(1) Engages in sexual intercourse

(2) Engages in deviate sexual conduct

(3) Appears in a state of nudity; or

(4) Fondles the genitals of himself or another person; commits public indecency, a Class A misdemeanor.

(b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state.

Although the statute does not define public place, our supreme court construed this term in *State v. Baysinger*, 272 Ind. 236, 397 N.E.2d 580 (1979), *dismissed sub nom. Clark v. Indiana*, 446 U.S. 931, 100 S.Ct. 2146, 64 L.Ed.2d 783 (1980); *Dove v. Indiana*, 449 U.S. 806, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980). In *Baysinger*, the supreme court was asked to consider whether the public indecency statute was unconstitutionally vague because the term "public place" was undefined in the statute. In holding that the statute was not unconstitutional, the court relied on the following definitions found in *Peachey v. Boswell*, 240 Ind. 604, 167 N.E.2d 48 (1960):

Webster defines 'public' as 'open to common and general use, participation, or en-

joyment' of the public. It has been held that the term 'public place' as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint.

A place may be accessible to the public for gambling notwithstanding that every person who desires is not permitted access thereto.

It has also been held that in a case involving a prohibition law that by 'public' is meant that the public is invited to come to the place and has access to it for the purpose within the scope of the business there maintained.

From a consideration of the terms 'accessible', 'public', and 'public place', as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase 'in any place accessible to the public' ... means any place where the public is invited and are free to go upon special or implied invitation—a place available to all or a certain segment of the public.

*Baysinger*, 272 Ind. at 240–41, 397 N.E.2d at 583 (citations omitted).

Here, Long argues that Regina's is a private membership only club and that because all of her acts occurred within the confines of the club, she is not chargeable with public indecency. In support of her position, Long relies on *Lorimer v. State*, 76 Ind. 495 (1881). In *Lorimer*, the defendant exposed himself to others in a blacksmith shop and he was found guilty of public indecency. Lorimer appealed and argued that the blacksmith shop was not a public place. Our supreme court concluded that the blacksmith shop was not necessarily a public place and reversed the trial court's judgment as it failed to deliver a jury instruction which stated:

*A shop or other building is the private property of its owner, unless he, of his own volition, so uses them as to give the public a right to enter them at will;* and every one owning such building may, by himself or agent, *invite any number* of his neighbors *into his house or shop*, and such persons may assemble there pursuant to

such invitation, and *such assembling would not make such a place a public place,* in the legal sense of that term.

*Id.* at 497 (emphasis added).

 Long contends that *Lorimer* is binding precedent and that Regina's, like the blacksmith shop, is private property in which the owner has invited individuals to assemble and, thus, that Regina's is not a public place. The *Lorimer* definition of a public place is not inconsistent with our supreme court's definition of a public place in *Baysinger.* The court in *Baysinger* concluded that "any place accessible to the public means any place where the public is invited and *are free to go* upon special or implied invitation—a place available *to all or a certain segment of the public.*" *Baysinger,* 272 Ind. at 240–41, 397 N.E.2d at 583 (emphasis added). In other words, a public place is any place where members of the public are free to go without restraint. While we agree that the mere assemblage of persons does not convert private property into a public place, here, unlike in *Lorimer,* it is clear that *any* adult member of the public may enter Regina's at will and without restraint. Although Long contends that Regina's restricts access to the club only to its members, those restrictions are illusory. Any individual over the age of eighteen may become a member at Regina's and view nude dancing. That person need only complete an application form, show other identification and pay a $1.00 annual membership fee. To gain admittance to the club, the individual must merely show his membership card, other identification and pay a $5.00 cover charge. Further, Regina's advertisements in the local media and on its street signs do not indicate in any manner that the club restricts access to members only.

 While a private residence or private club is not a public place, *see State v. Culp,* 433 N.E.2d 823, 825 (Ind.Ct.App.1982), *trans. denied.* 446 N.E.2d 969 (1983), we must decline Long's invitation to conclude that Regina's is a private establishment. Regina's is not a bona fide private club in that it lacks any attributes of self-government and member ownership traditionally associated with private clubs. *See, e.g., Daniel v. Paul,* 395 U.S. 298, 301, 89 S.Ct. 1697, 1699, 23 L.Ed.2d 318, 323 (1969) ($0.25 membership fee to obtain membership card and privileges without other evidence of self-government and member-ownership held to be a device to avoid coverage of Title II of the Civil Rights Act of 1964).

Anyone over 18 years of age who can afford to pay $1.00 per year may become a member of Regina's and view the nude dancing. Regina's members do not receive any information about business operations or financial reports. The members do not determine what prices are to be charged within the club nor do they have any ownership interest in the business. Regina's membership has not adopted articles or a constitution or established any by-laws which govern membership. This is not an exclusive or an exhaustive list of attributes associated with a private club, but it is clear that Regina's patrons do not constitute the membership of a private club. Rather, Regina's is a for-profit business organization that created the membership fee and card procedure in an attempt to transform a public place into a private establishment. Individuals are free to enter Regina's without restraint, and the nominal membership fee, in itself, is insufficient to convert a business establishment held open to the general public into a private place. We agree with the trial court's finding that this arrangement is a sham intended to avoid application of the public indecency statute. Thus, we must conclude that Regina's is accessible to the public without restraint.

While we conclude that Regina's is a public place, this court has found that private areas may exist within a public place precluding prosecution for public indecency. *See, e.g., Lasko v. State,* 409 N.E.2d 1124 (Ind.Ct.App. 1980) (locked separate room within massage parlor where act occurred between two consenting adults not public place); *see also, Sweeney v. State,* 486 N.E.2d 651 (Ind.Ct. App.1985) (enclosed viewing booth which faced enclosed stage permitting only private showing between two persons not a public place); *but see, Adims v. State,* 461 N.E.2d 740 (Ind.Ct.App.1984) (stage with more than one dancer surrounded by six enclosed view-

ing booths permitting more than one viewer was public place).

The facts of this case differ from those in *Lasko* and *Sweeney* where the indecent conduct occurred between two consenting adults within an enclosed area which was not visible to or accessible to members of the public. Long performed in an area accessible to the public on an open stage where her nude dancing was viewed by an assemblage of people. We are not persuaded by Long's argument that the stage is like the bathroom stall in *Chubb v. State*, 640 N.E.2d 44 (Ind. 1994) because her conduct was "not visible to the casual public eye." *See id.* at 47. Long's conduct occurred within the public eye because she performed on a stage in a public place which was visible to anyone desiring to see her performance. There is no similarity between the stage at Regina's and a bathroom stall which, if a public place, would make the use of a public restroom a crime. Rather, the facts in this case are analogous to those in *Adims*, where the dancers performed before six viewers at one time and we concluded that the dancers' conduct occurred in a public place. *Adims*, 461 N.E.2d at 743.

Finally, Long asserts that the underlying purpose of the public indecency statute is not served by enforcing her arrest. She contends that all patrons within Regina's are consenting adults who wish to see nude dancing and that the statute's purpose is to protect the unwilling viewer from being forced to observe offensive behavior. However, as Justice Scalia described in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504, (1991), offense to the viewer is not the State's only valid interest in prohibiting public nudity. He wrote that:

> The purpose of Indiana's nudity law would be violated, I think, if 60,000 fully consenting adults crowded into the Hoosier Dome to display their genitals to one another, even if there were not an offended innocent in the crowd. Our society prohibits, and all human societies have prohibited, certain activities, not because they harm others but because they are considered, in the traditional phrase, "*contra bonos mores*," *i.e.*, immoral.

*Id.* at 575, 111 S.Ct. at 2465, 115 L.Ed.2d at 517. The State has the inherent power to enact laws, within constitutional limits, to promote safety, health, morals and the general welfare of society. *Zahm v. Peare*, 502 N.E.2d 490, 494 (Ind.Ct.App.1985). Thus, public policy supports the enforcement of Long's arrest.

### Conclusion

We hold that Long's nudity occurred in a public place because Regina's is open to the public and patrons are able to enter at will. Although Long asserts that Regina's restricts access to club members, the membership fee and card are insufficient to convert an otherwise public place into a private club. Further, Regina's does not have any attributes of self-government, membership participation or ownership typically associated with a private club. While private areas may exist within a public establishment, Long's actions did not occur in a private area between two consenting adults. Her actions occurred before an assemblage of people, and although they apparently desired to see her performance, the State has a valid interest in prohibiting activities considered immoral. The trial court properly denied Long's motion to dismiss her charges.

Affirmed.

ROBERTSON and BAKER, JJ., concur.