James A. **PALMER** and Thelma L. Palmer, Appellants–Respondents,

v.

David J. **GORECKI**, M.D., Appellee–Petitioner.

No. 46A03–0506–CV–286.

Court of Appeals of Indiana.

March 20, 2006.

Rehearing Denied July 12, 2006.

Steven L. Langer, Steven R. Pribyl, Langer & Langer, Valparaiso, for Appellants.

Mark A. Lienhoop, Matthew J. Hagenow, Newby, Lewis, Kaminski & Jones, LLP, La Porte, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Respondents, James A. Palmer (James) and Thelma L. Palmer

(Thelma) (collectively, the Palmers), appeal the trial court's grant of summary judgment in favor of Appellee–Petitioner, David J. Gorecki, M.D. (Dr. Gorecki).

We affirm.

## ISSUES

The Palmers raise four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court erred as a matter of law by concluding that the Palmers' Complaint is barred by the statute of limitations;

(2) Whether the trial court erred as a matter of law by concluding that the statute of limitations is not tolled by the doctrine of fraudulent concealment or the doctrine of continuing wrong; and

(3) Whether the trial court erred as a matter of law by concluding that the Palmers cannot bring a derivative consortium claim.

## FACTS AND PROCEDURAL HISTORY

This case stems from the Palmers' Complaint, filed in March of 2002, against Dr. Gorecki, alleging injuries as a result of unnecessary antibiotic treatment following a purported misdiagnosis of endocarditis. From February 16, 1993 until February 28, 2001, Dr. Gorecki was James' cardiologist. James began seeing Dr. Gorecki after having undergone open heart surgery, and as part of James' treatment Dr. Gorecki ordered and interpreted several echocardiograms. Based on his reading of a December 1995 echocardiogram, Dr. Gorecki became concerned about a possible bacterial infection. A transesophageal echocardiogram was performed on January 5, 1996 to further evaluate the suspected endocarditis on James' aortic valve. As a result of the reading, Dr. Gorecki re-

ferred James to Denise Weaver, M.D. (Dr. Weaver), an infectious disease expert.

After consulting with Dr. Gorecki, Dr. Weaver relied in part on Dr. Gorecki's interpretation of the echocardiogram showing a new growth to initiate antibiotic therapy for infectious endocarditis. On February 22, 1996, James started the antibiotic treatment. Shortly after his first treatment, James began to experience an adverse reaction to the antibiotics and exhibited signs of dizziness, nausea, and imbalance. His physical condition deteriorated to the point where he was admitted to the LaPorte Hospital on March 16, 1996. The antibiotic therapy was discontinued following a final treatment that same day.

Two weeks later, on April 1, 1996, James was seen by Kevin Burns, M.D. (Dr. Burns) at the Caylor–Nickel Clinic located in Bluffton. Dr. Burns concluded that James' symptoms were directly related to toxic effects of the antibiotic therapy and diagnosed him with vestibular toxicity. In August of 1996, James was examined at the Mayo Clinic. Byron A. Olney, M.D. (Dr. Olney), a cardiovascular disease and internal medicine specialist, concluded that there was no evidence of vegetative growth on the heart valve. In a letter dated August 26, 1996, Dr. Olney wrote that

[a]t this time, [James] was described as having multiple small irregularities on the aortic valve cusps but no large pedunculated lesions. It was felt that these irregularities could be the residua of infectious endocarditis but could also be simple excrescences. His aortic stenosis was classified as mild with an aortic valve area calculated at 1.6cm2. The conclusion from the infectious disease evaluation was that there was no current evidence for active endocarditis.

(Appellant's App. p. 30).

On February 6, 1998, the Palmers filed a Proposed Complaint with the Indiana De-

partment of Insurance against Dr. Weaver, alleging medical malpractice for misdiagnosing infective endocarditis and unnecessarily prescribing the antibiotic therapy. The Palmers did not name or add Dr. Gorecki as a defendant in their claim against Dr. Weaver. On December 13, 1999, a medical review panel decided that the evidence did not support the conclusion that Dr. Weaver failed to meet the applicable standard of care in the Proposed Complaint.

Thereafter, on March 14, 2002, the Palmers filed their Proposed Complaint against Dr. Gorecki and sought recovery based on claims of negligence, passive and active fraudulent concealment, continuing wrong, and loss of consortium. However, by agreement of the parties the complaint was "deemed commenced" on April 26, 2001. (Appellant's App. p. 15). On March 29, 2004, the Palmers provided their submission to the medical review panel. Thereafter, on April 23, 2004, Dr. Gorecki filed his Petition for Preliminary Determination of Law for Summary Judgment and Memorandum in Support with designated materials. On May 13, 2005, after the Palmers replied in a Memorandum in Opposition, a hearing was held on the petitions. On May 20, 2005, the trial court entered summary judgment in favor of Dr. Gorecki.

The Palmers now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

In their appeal, the Palmers contend that the trial court improperly granted summary judgment in favor of Dr. Gorecki because their claim was barred by the statute of limitations. They further allege that the statute of limitations was tolled by the doctrine of fraudulent concealment and by the doctrine of continuing wrong.

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the nonmoving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986).

When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside of the statutory period, the burden shifts to the nonmoving party to establish an issue of fact material to a theory that avoids the affirmative defense. *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 695 (Ind.2000).

### II. *Statute of Limitations*

First, the Palmers contend that the trial court improperly granted summary judgment in favor of Dr. Gorecki on the basis that their claim was barred by the statute of limitations. Indiana Code section 34–18–7–1 provides that a medical malpractice claim must be filed within two years after the date of the alleged act,

omission, or neglect. In applying this statute, Indiana courts have repeatedly held that this two-year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *See, e.g., Martin v. Richey,* 711 N.E.2d 1273, 1278 (Ind.1999). Although this occurrence-based statute of limitations has been upheld as constitutional on its face under the Indiana Constitution, Article I, Sections 12 and 23, on the other hand, it has also be held to be unconstitutional as applied to plaintiffs who, in the exercise of reasonable diligence, could not have discovered the alleged malpractice within the two-year limitation period. *Id.* at 1278; *Van Dusen v. Stotts,* 712 N.E.2d 491, 495 (Ind.1999).

Recently, in *Booth v. Wiley,* 839 N.E.2d 1168, 1172 (Ind.2005), our supreme court clarified the methodology guiding the application of the medical malpractice statute of limitations as follows:

> Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonable diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period. In such cases where discovery occurs before the statutory deadline but there is insufficient time to file ... we hold that such claimants must thereafter initiate their actions within a reasonable time.

*Id.*

 In determining the discovery date, we construe all facts in favor of the Palmers as nonmovants. *See Levy v. Newell,* 822 N.E.2d 234, 238 (Ind.Ct.App. 2005), *trans. denied.* However, as the *Wiley* court noted, the discovery date does not solely depend upon when a claimant discovers the malpractice but also on when a claimant has enough information that through reasonable diligence would lead to the discovery of the alleged malpractice and resulting injury. *Wiley,* 839 N.E.2d at 1172.

In the case at bar, the alleged act or omission which commences the running of the statute of limitations is Dr. Gorecki's interpretation of the December 1995 echocardiogram. The record shows that upon reading the echocardiogram, Dr. Gorecki informed James of his concerns of a possible bacterial infection. After a transesophageal echocardiogram was performed on January 5, 1996, Dr. Gorecki referred James to Dr. Weaver to initiate the antibiotic treatment for his suspected endocarditis.

Shortly after starting this treatment, the record reflects that James experienced an adverse reaction to the therapy. His symptoms progressed to the point where he was admitted to the LaPorte Hospital, where his antibiotic treatment was discontinued in March of 1996. Seeking independent consultation at the Mayo Clinic in August of 1996, Dr. Olney informed James and his daughter, a registered nurse, that no evidence of a vegetative growth could be found on James' heart valve. In his letter dated August 26, 1996, Dr. Olney explained that "[t]he conclusion from the infectious disease evaluation was that

there was no current evidence for active endocarditis. I reviewed all of this with [James] and his family." (Appellant's App. p. 30). Thus, by August of 1996, James and his family were in the possession of facts that through reasonable diligence would lead to the discovery of Dr. Gorecki's alleged misreading of the echocardiograms. *Id.*

Accordingly, because we conclude that the Palmers reasonably should have known of the alleged malpractice by August 26, 1996, a date which falls within the occurrence-based limitations period, we next must determine whether the Palmers' claim could have been asserted before the expiration of the limitations period. *See id.* Here, the statute of limitations began to run in December of 1995, and thus, in August of 1996 approximately sixteen months remained before the occurrence-based limitations period expired. Under the particular facts and circumstances presented, we find that sixteen months does not constitute a reasonable impossibility in which to timely assert a malpractice claim. *See id.*

### III. *Tolling of the Statute of Limitations*

As shown above, based on the alleged misreading of James' echocardiogram in December of 1995, the two-year occurrence-based limitations period expired in December of 1997. The Palmers did not file their medical malpractice complaint against Dr. Gorecki until April 26, 2001. In an effort to avoid the expiration of the two-year statute of limitations, the Palmers now claim that the doctrine of fraudulent concealment or the doctrine of continuing wrong should apply and prevent their claim from being time-barred.

### A. *Fraudulent Concealment*

 The Palmers contend that their medical malpractice claim was timely filed because the doctrine of fraudulent conceal-

ment tolled the statute of limitations. The doctrine of fraudulent concealment is an equitable remedy that operates to bar a defendant from asserting the statute of limitations as a defense. *Garneau v. Bush,* 838 N.E.2d 1134, 1142 (Ind.Ct.App. 2005). Under this doctrine, a defendant who prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception, is estopped from raising a statute of limitations defense. *Id.*

 There are two types of fraudulent concealment, active and passive. *Hopster v. Burgeson,* 750 N.E.2d 841, 857 (Ind. Ct.App.2001). Passive or constructive concealment may be merely negligent and arises when the physician does not disclose to the patient certain material information. *Id.* "The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known constitutes constructive fraud." *Id.* (quoting *Cyrus v. Nero,* 546 N.E.2d 328, 330 (Ind.Ct. App.1989)).

 In the medical malpractice context, the doctrine of fraudulent concealment may operate to toll the statute of limitations until the termination of the physician-patient relationship, or until the patient discovered, or in the exercise of reasonable diligence should have discovered, the doctor's alleged malpractice. *Halbe v. Weinberg,* 717 N.E.2d 876, 882 (Ind. 1999). Thus, under the fraudulent concealment doctrine, the critical event for purposes of determining whether an action was timely filed is the plaintiff's discovery of facts that should have alerted them that they have a cause of action. *Garneau,* 838 N.E.2d at 1143.

The Palmers claim that Dr. Gorecki concealed the correct echocardiogram readings from them, thereby preventing them from discovering the alleged malpractice. They assert that Dr. Gorecki should have

known that the findings of the December 1995 and January 1996 echocardiograms did not reflect any infective endocarditis. Accordingly, they maintain that Dr. Gorecki's representation of James' condition until the termination of the physician-patient relationship on February 28, 2001 constituted fraudulent concealment, tolling the statute of limitations. We disagree.

To successfully invoke the doctrine of fraudulent concealment, the Palmers must establish that Dr. Gorecki's concealment of material information somehow prevented them from inquiring into or investigating James' condition, thus preventing them from discovering a potential cause of action. *See id.* Here, the record lacks such uncontroverted evidence. Accordingly, under the facts and circumstances before us, the doctrine of fraudulent concealment does not save the Palmers' claim.

### B. *Continuing Wrong*

Next, the Palmers contend that the doctrine of continuing wrong tolled the commencement of the statute of limitations. The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Id.* When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. *Id.* In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id.* "The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place." *Id.* (quoting *Coffer v. Arndt,* 732 N.E.2d 815, 821 (Ind.Ct.App.2000), *trans. denied* ). However, in *Havens v. Ritchey,* 582 N.E.2d 792, 795 (Ind.1991) our supreme court held that

> [a] physician cannot be under a continuing duty to review all files daily to ensure that he did not misdiagnose a condition of a patient he may not have

seen for several months or even years. This duty would be completely overwhelming to health care providers, and cut against the purposes of the Medical Malpractice Act. We hold that when the sole claim of medical malpractice is a failure to diagnose, the omission cannot as a matter of law extend beyond the time the physician last rendered a diagnosis.

Accordingly, the latest date upon which the statute of limitations for Palmers' claim began to run was February 28, 2001, the last time James visited Dr. Gorecki's office and the date the doctor-patient relationship ended. Nevertheless, we are mindful that a plaintiff may not sit idly by if they discover facts that alert them that they have a cause of action. *Garneau,* 838 N.E.2d at 1145. The doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point. *Id.* (citing *C & E Corp. v. Ramco Indus., Inc.,* 717 N.E.2d 642, 645 (Ind.Ct.App. 1999)).

Here, the Palmers were aware of facts which should have led them to discover their cause of action by August 26, 1996. Therefore, the doctrine of continuing wrong did not prevent the statute of limitations from beginning to run, and now, does not save the Palmers' claim from summary judgment.

### III. *Derivative Consortium Claim*

Lastly, the Palmers assert that the trial court erred in concluding that the Palmers' derivative consortium claim did not survive. However, a loss of consortium claim is derivative of the injured spouse's claim. *Durham ex rel. Estate of Wade v. U–Haul Intern.,* 745 N.E.2d 755,

764 (Ind.2001), *reh'g denied.* Thus, if the spouse's cause of action fails, the loss of consortium claim falls with it. *Id.* Therefore, because we affirm the trial court's summary judgment ruling in favor of Dr. Gorecki, Thelma's loss of consortium claim is not viable.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted Dr. Gorecki's motion for summary judgment as a matter of law.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.