Frank **BROADHACKER**, Ann Broadhacker and Reel One, an Indiana Corporation, Appellants–Defendants,

v.

**CITY OF INDIANAPOLIS and the Metropolitan Development Commission of Marion County, Indiana, Appellees–Plaintiffs.**

No. 49A02–0511–CV–1084.

Court of Appeals of Indiana.

April 17, 2007.

Stuart T. Bench, Bench Law Office, Indianapolis, IN, Attorney for Appellants.

Andrew J. Mallon, City of Indianapolis, Indianapolis, IN, Attorney for Appellees.

## OPINION

MAY, Judge.

Frank and Ann Broadhacker and Reel One, Inc. appeal a summary judgment for the City of Indianapolis. We reverse, as there is a genuine issue of material fact whether Reel One is a private club and therefore not subject to the nuisance ordinance on which the City relied to enjoin the operation of Reel One and fine the Broadhackers.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Reel One as the non-moving party are that the Broadhackers started Reel One as a private club in 1992. When they inquired with the City, they were told by a City representative the property was in the correct zoning district for the contemplated use as a "private social club for adults only," (App. at 78), and that no permits or licenses were required. Reel One was incorporated as a not-for-profit[1] corporation in 1994. (Id. at 350.)

About eleven years after Reel One began operating, Indianapolis police officers Robert and Kimberlee Cook[2] were sent to Reel One in plain clothes to conduct an undercover investigation. They indicated they were interested in joining the club and they asked for a tour. They provided identification and were given an application form, which they read and signed. The application form includes a "Membership Agreement" stating Reel One "is a private club for members only. This club is not open to the public, nor shall the general public be allowed to use the premises." (Id. at 428.) The agreement provides the application will be presented to the "Club Review Board," (id.), and if the application is denied all fees will be refunded. A notation on the Cooks' application for membership says "Reviewed by Ann" and the word "accepted" is checked. There is no check mark beside the word "denied." (Id. at 409.) The application both police officers signed also states: "I certify under penalty [sic] of perjury I'm not a law inforcement [sic] officer of any federal, state, or local government, or not working for or on the behalf of any law enforcement agency ... I certify that all information given is true." (Id. at 428.)

---

1. The City asserts, without explanation or citation to the record, "It is undisputed that Reel One is a *for profit* corporation that enriches only its private owners—the Broadhackers." (Appellees' Br. at 8) (emphasis supplied). In its Statement of Facts the City says Reel One has operated since 1992 "and became Reel One, Inc. in August of 1994. App. 350." That page of the appendix is part of the Broadhackers' joint affidavit, where they state "Reel One, Inc. has at all times ... retained its status as a *Not for Profit* Corporation." (Emphasis supplied.)

2. The Cooks are married to each other.

After they completed the application, the Cooks were given a membership card and told to use it on subsequent visits. Another individual then greeted them and took the officers on a tour of the club. On the tour, the officers saw various adults whose genitals were visible and who were performing sex acts. The City then brought an action to enjoin the operation of Reel One and to fine the Broadhackers.

The City's action was premised in part on Section 391–601 of the revised code of the City of Indianapolis.[3] That section provides a business where persons pay to view or to participate in "live sex and violent acts" is a public nuisance *per se.* Section 391–602 defines a covered "business" as one that "offers any services, facilities, or goods to the general public or to a discernible segment thereof." It defines "Live sex and violent act"[4] as including any of several sex acts, though it does not appear to address violent acts. Under Section 391–603, it is unlawful to own, operate, or manage in the city or county a business where persons may view or participate in a "live sex and violent act" for consideration. This ordinance did not exist in 1992 when the Broadhackers started Reel One.

Both the City and the Broadhackers moved for summary judgment and the City ultimately obtained summary judgment on four of the counts. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a summary judgment, we stand in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse. *Palmer v. Gorecki,* 844 N.E.2d 149, 153 (Ind.Ct.App.2006), *reh'g denied, trans. denied* 860 N.E.2d 597 (Ind.2006). Thus, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all the designated evidence in the light most favorable to the nonmoving party, here the Broadhackers. We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party, here the City. *Ill. Farmers Ins. Co. v. Wiegand,* 808 N.E.2d 180, 184 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 975 (Ind.2004). The party appealing the summary judgment has the burden of persuading us the trial court's ruling was improper. *Palmer,* 844 N.E.2d at 153. The grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

### *Private Club*[5]

The City does not define "private club" in the ordinance before us, nor do the

---

**3.** The City also accused the Broadhackers of maintaining a hotel without a license to do so. That count is not before us on appeal.

**4.** We acknowledge Judge Baker's position that the plain language of the ordinance must be read to prohibit only acts that include *both* sex and violence, and Judge Sullivan's position that despite its "violent act" language, the ordinance may be read to prohibit acts that involve sex but not violence. While we

do not reach the question whether the ordinance may be read not to require a prohibited act be "violent," we note the City does not contend, nor does the record reflect, that Reel One violated any "violent act" component of the ordinance.

**5.** Because we find a genuine issue of material fact as to whether Reel One is a private club subject to the City's "live sex and violent acts" ordinance, we do not address Reel One's al-

parties direct us to any state statute that does so. In arguing Reel One is not a "private club," the City relies on *Long v. State,* 666 N.E.2d 1258, 1259 (Ind.Ct.App. 1996). *Long* is distinguishable.

In *Long,* a dancer performing at Regina's House of Dolls was arrested for indecency. Long argued Regina's was a private club to which the indecency statute did not apply. We disagreed, noting Regina's, unlike Reel One, advertised in local newspapers of general circulation [6] and the advertisements typically included a photograph of the featured dancer and other information about the dancer. Unlike Reel One, Regina's advertised on two large lighted street signs that notified the public of the club's location and alluded to the type of entertainment provided there. Regina's advertisements in the local media and on its street signs did not indicate in any manner that the club restricted access to members only. We found it "clear that any adult member of the public may enter Regina's at will and without restraint." *Id.* at 1261.

Reel One, by contrast, has no signage on the building or grounds to indicate to the public the nature of the activities that take place inside; it does not advertise in local newspapers or other local media; nor does it in any other manner direct the general public to the club or invite the public inside. The evidence in the record suggests Reel One is not a place where "any adult member of the public may enter ... at will and without restraint." *See id.* Its membership agreement is explicit that the general public may not use the premises.[7]

We noted in *Long* that all individuals desiring admittance to Regina's were required to complete a membership card and, on some occasions, a membership application form. We found those restrictions "illusory" because "any individual over the age of eighteen could become a member at Regina's" by completing an application form, showing other identification and paying a $1.00 annual member-

---

ternative arguments the ordinance is preempted by state statute or the City is precluded on equitable grounds from enforcing the ordinance against Reel One.

**6.** The City asserts, without explanation, that Reel One "advertised in a magazine of general circulation called Cocoa 'N Creme." (Appellees' Br. at 2.) The exhibit to which the City refers us indicates Cocoa 'N Creme is published in Cleveland, Ohio, is sold for $10 per copy, and includes sexually explicit photographs, personal advertisements, and feature articles concerning "Swing Clubs." (App. at 433–34.) It includes an advertisement for Reel One on a page titled "Swing Club Listing." (*Id.*) It is obviously not, at least in any commonly understood legal sense, a publication of "general circulation." *See, e.g., Linn v. Allen,* 145 Ind. 584, 44 N.E. 646, 647 (1896) (daily newspaper devoted to the general dissemination of legal news and containing other matter of general interest to the public, and having a large general circulation, is a "newspaper of general circulation," within

the meaning of the publication statutes, but "there is no doubt that where a publication is devoted purely to a special purpose it would be an unfit medium to reach the general public").

**7.** The City asserts "[t]he testimony of officers Kimberlee and Robert Cook proves that Reel One is open to the public." (Appellants' Br. at 10.) It does not. There was no evidence the officers could or ever did enter Reel One before they became members. Rather, they were able to enter only after they completed a membership form that explicitly stated the club was not open to the public and only after they falsified their status as police officers. We decline the City's invitation to hold that evidence persons are able to enter a club by completing an application with false information necessarily "proves [the club] is open to the public." *Cf. Long,* 666 N.E.2d at 1259 (an undercover police officer had been in the club more than six times before he was required to show he was a member).

ship fee.[8] *Id.* An undercover police officer had been in the club on more than six occasions before he was required to purchase or prove membership.

The evidence in the case before us indicates there is, at the very least, a genuine issue of material fact as to whether the Reel One membership restrictions were similarly "illusory"; summary judgment was therefore improper. The City offers no evidence its officers, or any other persons, were ever able to enter Reel One without obtaining membership or showing a membership card.

■ Nor was there evidence Reel One accepted every applicant. Where new members must be approved by a "membership committee," the club "may still be considered public if no applicant is ever rejected, other than applicants of the disfavored race or sex. If nearly everyone who applies for membership is accepted, the club may not be considered private." *United States Power Squadrons v. State Human Rights Appeal Bd.*, 84 A.D.2d 318, 445 N.Y.S.2d 565, 573 (1981), *aff'd* 59 N.Y.2d 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199 (1983) (citations omitted). *See also Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439, 93 S.Ct.

1090, 35 L.Ed.2d 403 (1973) (club not private when· membership is "open to every white person within the geographic area").

The City cites *Long* in support of its statement that

> [i]n order for a club to be considered private, the Court held that *it must have certain attributes*, such as (1) being owned by its members, (2) receipt by its members of information about business operations and financial reports, (3) member determination of charges within the club and (4) member adoption of articles, a constitution, or bylaws governing membership.

(Appellees' Br. at 7) (emphasis supplied).

Our *Long* decision included no such holding, and we admonish the City's counsel to refrain from so mischaracterizing the authority on which it relies. We did note in *Long* that Regina's "lack[ed] any attributes of self-government and member ownership *traditionally associated with* private clubs," *id.* at 1261, but we nowhere said such "traditionally associated" attributes were *required* for a club to be "private." Rather, we explicitly stated, "This is not an exclusive or an exhaustive list of attributes associated with a private club." *Id.*[9] We decline the City's invitation to hold

---

**8.** We characterized the $1 membership fee as "nominal" and stated the fee, in itself, is "insufficient to convert a business establishment held open to the general public into a private place." 666 N.E.2d at 1261. Similarly, in *Daniel v. Paul*, 395 U.S. 298, 302, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969), the Court found a 25–cent membership fee, which entitled the purchaser to enter a club's premises for an entire season, was "no more than a subterfuge designed to avoid coverage of the 1964 [Civil Rights] Act.".

The Reel One membership fees were not so "nominal." The annual fee was $15, and there was a cover charge of $35 on Wednesday and Friday, and $45 on Saturday.

**9.** Those factors came from *Daniel*, 395 U.S. at 301, 89 S.Ct. 1697, which addressed prohibi-

tions under Title II of the Civil Rights Act of 1964 of discrimination or segregation on the ground of race, color, religion, or national origin at places of public accommodation. The prohibitions did not extend to discrimination or segregation at private clubs. The Court noted Lake Nixon was not a private club but was instead "simply a business operated for a profit with none of the attributes of self-government and member-ownership traditionally associated with private clubs." *Id.* After the Civil Rights Act was enacted, the Pauls began to refer to their establishment as a private club. They began to require patrons to pay a 25–cent membership fee, which gained a purchaser a membership card entitling him to enter the Club's premises for an entire season. On payment of specified additional fees the purchaser could use swim-

a club cannot, as a matter of law, be "private" unless it is owned by members who are directly involved in its operation.

## CONCLUSION

Summary judgment for the City was improperly granted, as there are genuine issues of fact as to whether Reel One is a private club. We accordingly reverse and remand.

Reversed and remanded.

BAKER, C.J., concurring in part and dissenting in part with separate opinion.

SULLIVAN, J., concurring in part and dissenting in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

I agree with the majority that whether Reel One is a private club is an issue of fact rendering summary judgment in the City's favor inappropriate. I respectfully dissent in part, however, from the disposition of the case.

As noted by the majority, the City's action is based in part on section 391–601, which prohibits businesses from permitting persons to pay to view or participate in "live sex and violent acts...." This provision does not separate or distinguish "sex" and "violent acts" and therefore, by its own plain language, prohibits only violent live sex acts or live violent acts that are accompanied by sex. *See, e.g., Sekerez*

*v. Youngstown Sheet & Tube Co.*, 166 Ind. App. 563, 567, 337 N.E.2d 521, 524 (1975) (holding that "and" and "or" as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature, respectively; thus, their ordinary meaning should be applied unless doing so leaves the meaning of the statute in doubt).

While I am certainly of the opinion that the government can restrict businesses from permitting people to pay to view or participate in live acts containing sex *or* violence *or* sexual violence *or* violent sex, the ordinance at issue herein prohibits *only* a live act containing both sex *and* violence. Inasmuch as we are not in the business of rewriting statutes or ordinances, we must apply this ordinance as drafted.

The City has not alleged explicitly or implicitly that any of the activities observed at Reel One involved violence. Indeed, the City's complaint includes no reference to violence whatsoever. Consequently, I would reverse the grant of summary judgment in favor of the City and would remand with instructions to enter summary judgment for the appellants on the counts—III and VI—that rely on Section 391–601.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree that whether Reel One is a "private club" is a question of fact and that

ming, boating, and miniature golf facilities. The Court saw this device as

no more than a subterfuge designed to avoid coverage of the 1964 Act. White persons are routinely provided 'membership' cards, and some 100,000 whites visit the establishment each season. As the District Court found, Lake Nixon is 'open in general to all of the public who are members of the white race.' [Kyles v. Paul] 263 F.Supp.,[412] at 418 [E.D.Ark.1967]. Negroes, on the other hand, are uniformly

denied 'membership' cards, and thus admission, because of the Pauls' fear that integration would 'ruin' the 'business.

*Id.* at 302, 89 S.Ct. 1697.

These statements in *Daniel* were apparently *dicta*, as the Pauls did not challenge before the Supreme Court the lower court's conclusion the club was not "private": "The conclusion of the courts below that Lake Nixon is not a private club is plainly correct—indeed, respondent does not challenge that conclusion here." *Id.*

therefore, summary judgment was improperly granted in favor of the City. However, I respectfully disagree with Chief Judge Baker insofar as he construes the ordinance to target "only violent live sex acts or live violent acts that are accompanied by sex." Baker, C.J., concurring in part and dissenting in part as referenced in Judge May's lead opinion at Footnote 4. Op. at 374.

The ordinance in question prohibits a business where persons pay to view or participate in "live sex and violent acts...." In my estimation, the Chief Judge takes unwarranted liberties with the language chosen by the City. He engrafts the word "violent" onto the phrase "live sex" acts and then in turn engrafts the word "sex" onto the phrase "violent acts." He does so under the guise of honoring use of the conjunctive "and" between the respective phrases as set forth in the ordinance.

It is possible to read the conjunctive "and" to delineate two types of conduct which are not necessarily interrelated. Live sex acts are prohibited, as are violent acts. Perhaps a danger is perceived in prohibiting all violent acts because such creates an arguably unconstitutional vagueness and overbreadth problem.

My reading of the precise language of the ordinance tells me that "live sex" acts are prohibited with or without violence being involved. But the ordinance purports to go further and prohibit "violent acts." As the lead opinion notes, the ordinance defines "[l]ive sex and violent act as including any of several sex acts, though it does not appear to address violent acts." Op. at 373–74. Unless some sexual connotation is read into the prohibition against violent acts, as is done by Chief Judge Baker, the prohibition might seem to create an incipient problem of vagueness and overbreadth. For example, to prohibit

"pay to view" all violent acts would forbid the Golden Gloves competition, not to mention NFL football contests.

Chief Judge Baker's separate opinion references that "we are not in the business of rewriting statutes or ordinances, [and that accordingly] we must apply this ordinance as drafted." Op. at 373. But I conclude that the Chief Judge does not adhere to his own cautionary advice and in fact does rewrite the ordinance in a seeming attempt to salvage the entirety of the legislation.

The preferable course, I believe, would be to view the intent of the ordinance as a regulation against charging a fee for sexual voyeurism and/or participation in live sex acts. The thrust of the ordinance is aimed at sexual activity whether or not violence is also involved. The position taken by the Chief Judge, however, shifts the focal emphasis of the prohibition from sex acts to acts of violence. I do not believe this to have been the intent of the City Council. In this respect, and as observed in Judge May's opinion, no contention is made by the City that Reel One has violated the "violent acts" component of the ordinance.

This then presents to us an opportunity to consider the two components of the prohibition as severable. I discern that the City Council would have passed the ordinance without any language concerning "violent acts." *See State v. Barker*, 809 N.E.2d 312 (Ind.2004), *reh'g on other grounds* 826 N.E.2d 648; *Municipal City of South Bend v. Kimsey*, 781 N.E.2d 683 (Ind.2003). That phrase in the ordinance is therefore severable from the remainder of the legislation, which may be held valid and enforceable. *See Hobble v. Basham*, 575 N.E.2d 693 (Ind.Ct.App.1991). As noted by Judge May, however, the "violent acts" provision is not involved in this case and the issue need not be addressed.

If the situation were otherwise, I would apply the doctrine of severability in the case before us and would excise the words "violent acts" from the ordinance so as to give full effect to the sexual connotation of the ordinance thus achieving what I deem to be the principal thrust of the City's legislation.

As earlier noted, I concur in the holding of the majority that whether Reel One is a "private club" is a question of fact and would remand for further proceedings.