**Daniel E. HOAGLAND, Karen Hoagland, and Hoagland Family Limited Partnership, Appellants–Plaintiffs,**

v.

**TOWN OF CLEAR LAKE BOARD OF ZONING APPEALS, Appellee–Defendant.**

No. 76A03–0610–CV–495.

Court of Appeals of Indiana.

Aug. 8, 2007.

J. Michael Loomis, Fort Wayne, IN, Attorney for Appellants.

W. Erik Weber, Neal R. Blythe, Mefford and Weber, Auburn, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Daniel and Karen Hoagland and the Hoagland Family Limited Partnership (collectively, the "Hoaglands") appeal the trial court's dismissal of their petition for writ of certiorari regarding a decision by the Town of Clear Lake Board of Zoning Appeals ("BZA"). The Hoaglands raise four issues, which we consolidate and restate as whether the trial court erred by dismissing the Hoaglands' petition for writ of certiorari regarding a decision by the BZA. We affirm.

Today, we also issue a decision in *Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 871 N.E.2d 376 (Ind.Ct.App. 2007). In that appeal, the Hoaglands challenged the trial court's dismissal of their petition for judicial review. That appeal relates to the BZA's December 20, 2005, denial of their appeal regarding an Improvement Location Permit ("ILP") issued to Jim and Cathlene Nevin for the remodeling of their residence. In this appeal, the Hoaglands challenge the trial court's dismissal of their petition for writ of certiorari regarding a second ILP issued concerning the Nevins' property.

The relevant facts regarding the second ILP follow. On November 11, 2005, the zoning inspector for the Town of Clear Lake, Indiana, issued a second ILP to Steven D. Tagtmeyer to rebuild an existing garage and add a shed to property located at 1120 Lake Dr. at Clear Lake. This property is owned by the Nevins, who are the Hoaglands' neighbors. The Hoaglands attempted to appeal to the BZA the issuance of the ILP, but the BZA, by counsel, informed the Hoaglands that it would not hear the appeal because the appeal request was received after the ninety-day appeal period had expired.

On April 7, 2006, the Hoaglands filed a petition for writ of certiorari of the BZA's denial of their appeal. The Hoaglands served notice of the petition upon the Nevins. In response, the BZA filed a motion to dismiss to petition for writ of certiorari. The BZA alleged that the petition should be dismissed because the Hoaglands failed to provide notice of the petition to Tagtmeyer, who was the applicant on the ILP in question. The BZA also alleged that the petition should be dismissed because the verified petition was signed only by Daniel and Karen Hoagland, but the property is owned by the Hoagland Family Limited Partnership. According to the BZA, Daniel and Karen Hoagland did not sign the petition on behalf of the Hoagland Family Limited Partnership, and, thus, an aggrieved party did not sign the petition. After a hearing, the trial court entered an order granting the BZA's motion to dismiss as follows:

1. On November 14, 2005 the Clear Lake Zoning Inspector issued an [ILP] to one Steven Tagtmeyer. The improvements were to be made upon real estate owned by James and Cathleen Nevin.

2. The improvements to be made by virtue of the issuance of the [ILP] impacted upon real estate titled in the name of Hoagland Family Limited Partnership, FLP.

3. Hoagland and the Hoagland Family Limited Partnership, FLP sought administrative review of the zoning inspector's issuance of the [ILP] by certified letter directed toward the BZA and dated February 10, 2006.

4. By letter dated March 11, 2006 the BZA through its attorney notified counsel for Hoagland and the Hoagland Family Limited Partnership, FLP that the BZA would not hear the

appeal it having been untimely requested.

5. On April, 7, 2006 a Verified Petition and Request for Writ of Certiorari was filed in the Steuben Circuit Court.

6. The Verified Petition and Request for Writ of Certiorari was executed by Daniel E. Hoagland and Karen Hoagland.

7. There does not exist on the signature page of the Verified Petition any signature made on behalf of the Hoagland Family Limited Partnership, FLP.

8. On May 5, 2006 the BZA filed its Motion to Dismiss Petition for Writ of Certiorari.

9. The BZA asserts several reasons why this Court lacks jurisdiction to proceed further with this case. The Court finds two (2) such reasons to be dispositive.

10. Ind.Code 36–7–4–1005(a)(2) provides as follows:

"If the petitioner ... is a person aggrieved by the decision of a board of zoning appeals as set forth in section 1003 of this chapter, the petitioner shall have a notice served by the sheriff of the county on:

(A) each applicant or petitioner for the use, special exception, or variance; *and*

(B) each owner of the property that is the subject of the application or petition for the use, special exception, or variance." (Emphasis Added)

11. Ind.Code 36–7–4–1003 provides, among other things, that:

"... Each person aggrieved by a decision of the board of zoning appeals or the legislative body may file with the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal ..."

12. The applicant for the [ILP] was Steven Tagtmeyer. The BZA correctly contends that Steven Tagtmeyer was not provided notice as required by Ind.Code 36–7–4–1005(a)(2) by the sheriff of Steuben County when the Petition for Writ of Certiorari was filed. Proper notice to statutorily designated persons is mandatory and is jurisdictional.

13. The BZA further contends that Hoagland is not an "aggrieved person" and, therefore, is without standing to pursue review of the actions taken by the BZA on November 14, 2005.

14. The BZA points out that the real estate which would adversely be impacted upon as a result of the action of the BZA on November 14, 2005 is not titled in the name of Hoagland, rather, this real estate is titled in the name of The Hoagland Family Limited Partnership, FLP.

15. The Petition for Judicial Review was verified only in the names of Daniel E. Hoagland and Karen Hoagland. No verification purports to be made on behalf of the Hoagland Family Limited Partnership, FLP.

16. As held in *Keil Chemical v. Common Council,* 612 N.E.2d 209 (Ind. App.1993) at page 212:

"In a proceeding for judicial review of an administrative determination, compliance with the statutory requirements for review, such as verification, is a condition precedent to jurisdiction ... where a statute requires verification by a party, a corporation must be represented by its executive or administrative officers ... here, the petition was not verified by an executive or administrative officer of Ferro Corpo-

ration, the actual 'person aggrieved[.]' [T]hus, the trial court properly found a lack of verification." (Citations Omitted)

17. The holding set forth in *Keil* would be equally applicable to a partnership. In the case at bar the "aggrieved person" was the Hoagland Family Limited Partnership, FLP and not [the] Hoagland[s] in their individual capacity.

18. Nothing on the signature page of the Verified Petition for Writ of Certiorari indicates that the Hoagland Family Limited Partnership, FLP is seeking judicial review of the action taken by the BZA on November 14, 2005.

19. This lack of proper verification deprives this Court of jurisdiction to proceed further with this case.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** as follows:

\* \* \* \* \*

6. [The BZA's] Motion to Dismiss shall be granted for each of those reasons set forth above.

Appellants' Appendix at 3–7. The Hoaglands then filed a motion to correct error, which the trial court denied.

On appeal, the issue is whether the trial court erred by dismissing the Hoaglands' petition for writ of certiorari regarding the decision by the BZA. The standard of appellate review of rulings on motions to dismiss on jurisdictional grounds depends on whether the trial court resolved disputed facts, and if so, whether the trial court conducted an evidentiary hearing or ruled on a paper record.[1] *Wayne County Property Tax Assessment Bd. of Appeals v. United Ancient Order of Druids–Grove # 29*, 847 N.E.2d 924, 926 (Ind.2006). We review de novo a ruling on a motion to dismiss for lack of jurisdiction if the facts are not disputed or, as here, the court rules on a paper record. *Id.*

The Hoaglands argue that the trial court erred by granting the motion to dismiss because separate signatures were not required on the verified petition for the Hoagland Family Limited Partnership and because they gave the proper notice under Ind.Code § 36–7–4–1005.[2] Because we conclude that the Hoaglands failed to give the proper notice, we need not address the verification requirements.

Decisions by boards of zoning appeals are subject to court review by certiorari. Ind.Code § 36–7–4–1003(a). The petition must be presented to the court within 30 days of the board's decision. I.C. § 36–7–4–1003(b) & (c). Specifically, a person "aggrieved by a decision of a board of zoning appeals ... may present to the circuit or superior court in the county in which the premises are located a verified petition setting forth that the decision is

---

1. In *United Ancient Order of Druids–Grove*, the Indiana Supreme Court held that such an issue "is properly raised by means of a motion under Rule 12(B)(1) for lack of jurisdiction or 12(B)(6) for failure to state a claim, depending on whether the claimed defect is apparent on the face of the petition." *Wayne County Property Tax Assessment Bd. of Appeals v. United Ancient Order of Druids–Grove # 29*, 847 N.E.2d 924, 926 (Ind.2006).

2. The Hoaglands also argue that the trial court should have treated the BZA's motion to dismiss as a motion for summary judgment. However, the Hoaglands did not raise this issue to the trial court. "A party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court." *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 652 (Ind.Ct.App.2002). Consequently, the Hoaglands waived this argument.

illegal·in whole or in part and specifying the grounds of the illegality." I.C. § 36–7–4–1003(a). The aggrieved party must also provide notice of the petition to certain, parties pursuant to Ind.Code § 36–7–4–1005. The Indiana Supreme Court has held that "[t]he court does not gain jurisdiction over the petition until the petitioner serves notice upon all adverse parties" as required by Ind.Code § 36–7–4–1005. *Bagnall v. Town of Beverly Shores,* 726 N.E.2d 782, 785 (Ind.2000). In *Bagnall,* the court noted: "To comply with the statute, a petitioner must file, with the clerk, notices to adverse parties contemporaneously to the filing of the writ petition." *Id.* "[S]trict compliance with the requirements of the statute governing appeals from decisions of boards of zoning appeals is necessary for the trial court to obtain jurisdiction over such cases."[3] *Id.*

 The trial court granted the motion to dismiss in part because the Hoaglands failed to give notice of the petition for writ of certiorari to Tagtmeyer. Resolution of this issue requires that we interpret the notice requirements of Ind.Code §. 36–7–4–1005. When interpreting a statute, we independently review a statute's

meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking,* 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

 We begin by noting that the BZA is statutorily authorized to "hear and de-

---

**3.** We note that the Indiana Supreme Court clarified jurisdiction concepts in *K.S. v. State,* 849 N.E.2d 538 (Ind.2006). The court held:

Like the rest of the nation's courts, Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

., Where these two exist, a court's decision may be set aside for ·legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations. 849 N.E.2d at 540. · The notice requirements in Ind.Code § 36–7–4–1005 implicate what

courts have previously called "jurisdiction over a particular case" rather than subject matter or personal jurisdiction. *See, e.g., Packard v. Shoopman,* 852 N.E.2d 927 (Ind. 2006) (holding that statutory deadlines for filing a petition for judicial review in the Tax Court referred to what was previously known as "jurisdiction over a particular case"); *United Ancient Order of Druids–Grove # 29,* 847 N.E.2d at 926 ("The timing of filing the agency record implicates neither the subject matter jurisdiction of the Tax Court nor personal jurisdiction over the parties. Rather, it is jurisdictional only in the sense that it is a statutory prerequisite to the docketing of an appeal in the Tax Court."). Consequently, although the court in *Bagnall* referred to this concept as jurisdiction over the case, we will not do so.

termine appeals from and review: (1) any order, requirement, decision, or determination made by an administrative official, hearing officer, or staff member under the zoning ordinance; ... [and] (3) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of an ordinance adopted under this chapter requiring the procurement of an improvement location or occupancy permit." Ind.Code § 36–7–4–918.1. Thus, the BZA is authorized to hear and determine appeals from the denial or issuance of an ILP[4] by the zoning inspector.[5] Further, as noted above, a person "aggrieved by a decision of a board of zoning appeals ... may present to the circuit or superior court in the county in which the premises are located a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." I.C. § 36–7–4–1003(a). Consequently, the BZA's decision regarding an appeal from the denial or issuance of an ILP may be presented to the trial court by way of a petition for writ of certiorari.

Under Ind.Code § 36–7–4–1005, the petitioner must give notice of the petition as follows:

\* \* \* \* \*

(1) If the petitioner is the applicant or petitioner for the use, special exception, or variance, the petitioner shall have a notice served by the sheriff of the county on each adverse party as shown by the record of the case in the office of the board of zoning appeals.

(2) If the petitioner is not the applicant for the use, special exception, or variance and is a person aggrieved by the decision of a board of zoning appeals as set forth in section 1003 of this chapter, the petitioner shall have a notice served by the sheriff of the county on:

(A) each applicant or petitioner for the use, special exception, or variance; and

(B) each owner of the property that is the subject of the application or petition for the use, special exception, or variance.

The service of the notice by the sheriff on the chairman or secretary of the board of zoning appeals constitutes notice of the filing of the petition to the board of zoning appeals, to the municipality or county, and to any municipal or county official or board charged with the enforcement of the zoning ordinance. No other summons or notice is necessary when filing a petition.

(b) An adverse party under this section is any property owner whose interests are opposed to the petitioner for the

---

4. "The purpose behind the procurement of an improvement location permit prior to the alteration, erection, or repair of a structure on platted or unplatted land is to ensure compliance with the local jurisdiction's zoning code." *Evansville Outdoor Advertising, Inc. v. Board of Zoning Appeals of Evansville and Vanderburgh County*, 757 N.E.2d 151, 160 (Ind.Ct.App.2001), *reh'g denied, trans. denied.*

5. The Hoaglands also cite, without any explanation, *Bixler v. LaGrange County Bldg. Dept.*, 730 N.E.2d 818 (Ind.Ct.App.2000). In *Bixler*, we held that a property owner contesting the issuance of an ILP to another property owner "may initiate a statutory appeal to the zoning board, [but] he or she is not required to do so." 730 N.E.2d at 820–821. Here, the Hoaglands voluntarily availed themselves of the administrative appeals process rather than proceeding directly to the trial court. Having done so, they were required to follow the statutory requirements for appealing the BZA's decision, including the notice provisions.

writ of certiorari and who appeared at the hearing before the board of zoning appeals either in person or by a written remonstrance or other document that is part of the hearing record. If the petitioner was an unsuccessful appellant in the administrative appeal, or an unsuccessful petitioner or applicant for a variance, special exception, or special or conditional use, and the record shows a written remonstrance or other document opposing the interest of the petitioner that contains more than three (3) names, the petitioner shall have notice served on the three (3) property owners whose names appear first on the remonstrance or document. Notice to the other persons named is not required.

(c) Notice given under subsection (a) must state:

 (1) that a petition for a writ of certiorari, asking for a review of the decision of the board of zoning appeals, has been filed in the court;

 (2) the premises affected; and

 (3) the date of the decision.

(d) An adverse party who is entitled to notice of a petition for writ of certiorari under subsection (a) is not required to be named as a party to the petition for writ of certiorari.

Ind.Code § 36–7–4–1005.

Here, the Hoaglands filed their petition for writ of certiorari on April 7, 2006. Although the Hoaglands served notice upon the property owners, the Nevins, they did not serve notice upon Tagtmeyer, who was the "applicant" on the ILP. As a result, the trial court found that the Hoaglands had failed to follow the statutory requirements.

■ On appeal, the Hoaglands argue that they were not required to provide notice to Tagtmeyer. The Hoaglands argue that we should interpret Ind.Code § 36–7–4–1005(a)(2)(A) as requiring notice only upon an "applicant ... for the use, special exception, or variance" and a "petitioner for the use, special exception, or variance." Because Tagtmeyer was an applicant for an ILP, not a use, special exception, or variance, the Hoaglands argue they were not required to give Tagtmeyer notice. On the other hand, the "use, special exception, or variance" language does not apply to the word "applicant." Thus, the BZA argues that we should read the statute as applying to an "applicant" and a "petitioner for the use, special exception, or variance." Because Tagtmeyer was an "applicant," the BZA contends that the Hoaglands were required to give notice of the petition to him.

Under Ind.Code § 36–7–4–1005, the Hoaglands were required to serve notice upon "(A) each applicant or petitioner for the use, special exception, or variance; and (B) each owner of the property that is the subject of the application or petition for the use, special exception, or variance." If we were to accept the Hoaglands' interpretation of the statute, the Hoaglands would not have been required to give notice to the Nevins either. The Nevins are not the owners of property that is the subject of an "application ... for the use, special exception, or variance." Rather, the Nevins are owners of property that is the subject of an application for an ILP. As a result, under the Hoaglands' interpretation, the Hoaglands would not have been required to serve notice of their petition on anyone except the BZA. See I.C. § 36–7–4–1005(a) (discussing service of notice to the BZA). We conclude that such a result was clearly not intended by the legislature. Rather, a more reasonable interpretation of the statute is that the Hoaglands were required to serve notice upon "each applicant" and "each owner of the property that is the subject of the application." Although the Hoaglands provided notice to the property owners, they did not provide

notice to the applicant.[6] Their failure to comply with the statute is fatal, and the trial court did not err by dismissing the Hoaglands' petition. *See, e.g., Bagnall,* 726 N.E.2d at 785 (holding that the petitioners did not "secure jurisdiction" where they failed to serve notice of the petition upon adverse parties); *Town of Cedar Lake Bd. of Zoning Appeals v. Vellegas,* 853 N.E.2d 123, 126–127 (Ind.Ct.App.2006) (holding that the trial court did not have jurisdiction to consider a petition for writ of certiorari where the petitioner failed to serve notice upon an adverse party).

For the foregoing reasons, we affirm the trial court's dismissal of the Hoaglands' petition for writ of certiorari.

Affirmed.

MAY, J., and BAILEY, J., concur.

---

**6.** The Hoaglands also argue that their notice to the Nevins was sufficient to provide notice upon Tagtmeyer. The Hoaglands base this argument upon Ind. Trial Rule 4.16(B), which provides: "Anyone accepting service for another person is under a duty to: (1) promptly deliver the papers to that person; (2) promptly notify that person that he holds the papers for him; or (3) within a reasonable time, in writing, notify the clerk or person making the service that he has been unable to make such delivery of notice when such is the case." According to the Hoaglands, the Nevins had to provide notice to Tagtmeyer under this rule. We conclude that this rule is not applicable. Trial Rule 4.16(B) applies only to a person "accepting service for another person." The Nevins were accepting service for themselves. There is no indication that the Nevins were accepting service for Tagtmeyer.