HAMILTON COUNTY PLAN COMMIS-
SION and Hamilton County South
Board of Zoning Appeals, Appellants–
Defendants,

v.

Dr. Jerry NIETEN and Sheila Nieten,
Appellees–Plaintiffs.

No. 29A05–0612–CV–736.

Court of Appeals of Indiana.

Nov. 14, 2007.

Randolph A. Leerkamp, Carmel, IN, At-
torney for Appellants.

John R. Price, John R. Price & Associates, Indianapolis, IN, Attorney for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The Hamilton County South Board of Zoning Appeals ("BZA") appeals the trial court's order reversing the determination by the BZA that a building maintained on property owned by Dr. Jerry Nieten and his wife, Sheila Nieten, ("the Nietens") constituted a violation of the Hamilton County Zoning Ordinance ("the Ordinance").

We affirm.

### ISSUE

Whether the existence of a building used as a guesthouse for occasional, temporary visitors was not prohibited by the Ordinance, and, therefore, the BZA's actions forbidding the Nietens to use it as such were erroneous as a matter of law.

### FACTS

In 1992, the Nietens moved into a newly constructed home located on ten acres zoned as an A–2 agricultural district in Hamilton County. In the spring of 1999, the Nietens built a support building associated with their operation of an organic farm on the property; the building included a small kitchen for food processing and canning and a toilet and shower. Subsequently, they ceased the organic farming operation. In the fall of 2000, the Nietens' son and his wife were living in the support building while attending college.

On November 6, 2002, the director of the Hamilton County Plan Commission ("HCPC") notified the Nietens that their use of the "accessory building" was a "change of use," which required that they obtain a variance. (App.265).[1] The Nietens hired counsel. In communication with their counsel, the director indicated that the HCPC might bring legal action against the Nietens. Therefore, on August 20, 2004, the Nietens filed an appeal to the BZA, challenging the determination that the ordinance prohibited their use of the accessory building.[2]

On October 19, 2004, the BZA considered the Nietens' appeal. The BZA affirmed that the Nietens' use of the building violated the Ordinance's prohibition of "more than one principal building used for residential purposes." (App.191).

On October 25, 2004, counsel for the BZA advised the Nietens that they could either appeal the decision by filing a petition for a writ or certiorari with the trial court or file "an application for variance from developmental standards (2 residences)." (App.302). Counsel further advised that "ignor[ing] the decision ... would probably result in an enforcement action." (App.302). The Nietens responded with repeated statements of their intention to file an application for a variance. In December of 2004, the Nietens advised counsel for the HCPC/BZA that they had met with the Health Department concerning whether the septic system on the property was adequate to service a guesthouse

---

1. These assertions by the director as to the violation—the Nieten's "change of use" of the "accessory building"—were repeated in the "Final Notice before being turned over to Plan Commission Attorney." (App.103).

2. The director had also informed the Nietens that two other matters as to their property violated the Ordinance. These other matters were also appealed by the Nietens to the BZA, which found them not to constitute violations.

and were awaiting a response in that matter. The response took several months.[3]

On March 16, 2005, the HCPC filed a complaint, alleging that the Nietens had "more than one principal building on their lot used for residential purposes in violation of" the Ordinance. (App.18). The complaint sought to enjoin the Nietens to comply with the ordinance or remove the accessory building from the property, as well as fines for each day of violation. The Nietens informed the director and HCPC that they were no longer using the building for residential purposes, and that it would only be infrequently used as a guesthouse for occasional visitors. Further, on May 3, 2005, with a motion for summary judgment, the Nietens submitted an affidavit stating that they "acknowledged" that the accessory building "could no longer be used as a second principal residence[,] ... that it would not be used as a second principal residence in the future," and "that no person was residing in such structure." (App.8). The HCPC then amended its complaint by adding an allegation that the Nietens had violated the Ordinance's "use" prohibition, found at Article 18(C), section 1(a).[4]

In correspondence dated May 18, 2005, counsel for the BZA acknowledged the affidavit stating that the Nietens were not using the accessory building as a residence and would not do so in the future. However, counsel advised that because the building could "still be used for a permanent residence," it still violated the Ordinance. (App.307). Counsel suggested "two solutions to the problems": that the Nietens

either "render the building uninhabitable" or "get a variance." *Id.* Counsel noted that another property owner with "exactly the same case" had applied for a variance, which had been granted by the BZA the previous evening "in about ten (10) minutes." (App.307).

On June 21, 2005, the Nietens filed an application for a "variance from Art. 18C Sec. 1a" to "allow" their "outbuilding" to be "used as a guest house." (App.43). The application specified that the "guest house would only be for occasional visitor use, not as a residence." *Id.*

The BZA considered the Nietens' request for a variance on July 19, 2005. Dr. Nieten testified that the Health Department had recently advised that the septic system was "not a problem" for use of the building "as a guest house." (App.92). In response to questioning, Dr. Nieten confirmed that the building would only be used on rare occasions by visitors, "maybe one week a year." (App.95). In response to a question from a BZA member, counsel for the BZA advised that the Ordinance did not contain "anything that defines a guest house." (App.95A). The BZA consists of five members; only four were present; the vote on granting the variance was two in favor and two against; and a majority vote is required to grant a variance. Therefore, the Nietens' request for a variance was denied.

On August 16, 2005, the Nietens filed their verified petition for a writ of certiorari in this matter. They alleged that the Ordinance did not forbid their use of an accessory building "to temporarily house a

---

3. On May 23, 2005, the Nietens urged the Health Department to respond with an opinion. On June 22, 2005, the Health Department advised that it "found no existing problems" on the Nietens' property and had "no objection to the accessory building being used occasionally for residential purposes." (App.

291). The next day, June 23, 2005, the Nietens sent a copy of the Health Department's letter to counsel for HCPC/BZA.

4. The language of this provision is provided subsequently, in the discussion of the specific contents of the Ordinance.

visiting guest." (App.20). They further alleged that the BZA's action constituted a taking in violation of both the Indiana and United States Constitutions, and was "without due process of law" in violation of the Indiana and United Constitutions in that "requirements concerning the use of a guest house ... are nowhere found in" the ordinance and "were made up ... without guidance of written law." (App.22, 23). The trial court issued a writ of certiorari. The BZA filed a return and submitted evidence, as did the Nietens. On April 11, 2006, the trial court heard oral argument.

On September 26, 2006, the trial court issued its findings of fact, conclusions of law, and judgment. The trial court's findings of fact are consistent with the foregoing. Further, the trial court specifically found that the Ordinance "does not use the word 'guesthouse' in its text" and that "the BZA knew of [the Nieten]s' May 3, 2005 Affidavit and the limitation to be placed upon the second structure." (App.9). It further found that at the July 19, 2005, BZA meeting to consider the Nietens' variance application, "counsel for the BZA was asked by a Board Member if the ... Ordinance had a section that applied to guesthouses," and that counsel "replied that it did not, that the Ordinance only addressed 'residences.'" (App.9).

The trial court then found as a matter of law the following:

40. The use of the second structure as a guesthouse with only an occasional and temporary occupant, such as set forth in the above-stated May 3, 2005 Affidavit, does not amount to a "principal building for residential purposes" and, as such, Hamilton County Zoning Ordinance ... Art. 18, C, Sec. 1, c, does not bar or prohibit the [Nieten]s' occasional and/or periodic short-use of their guesthouse for residential purposes.

41. The decision of the Director requiring the [Nieten]s to obtain a variance in order to use the second structure as a guesthouse was arbitrary, unreasonable, lacking in a rational basis and/or without benefit of law, and therefore illegal under I.C. 36-7-4-1003 [5] and 36-7-4-1009,[6] because said decision was not supported by or within the scope of the applicable Hamilton County Zoning Ordinances, which do not require a variance in such circumstances as the [Nieten]s'.

42. A guesthouse with only an occasional and temporary occupant, such as with the [Nieten]s' guesthouse, does not amount to a "dwelling" as defined in Hamilton County Zoning Ordinance ... Art. 2, Sec. 1.

43. Since the second structure is not a "principal building for residential purpose" nor a "dwelling" as defined by the [Ordinance], the Court can find no prohibition concerning the use of such second structure as set forth in the facts of this case. Therefore, it was, as a matter of law, illegal to not permit the use of such second structure and to require the [Nieten]s to obtain a variance from a non-existent zoning ordinance.

(App.9–10). The trial court further found that the BZA's decisions amounted to unconstitutional takings and violated the Nietens' due process rights. Accordingly, the trial court ordered the "illegal" decision of the BZA reversed. (App.15).

### DECISION

■ The BZA presents a series of separate issues and supporting arguments to assert that the trial court's numerous legal

---

5. Indiana Code section 36–7–4–1003 provides for the trial court to review by certiorari the decisions of a board of zoning appeals.

6. Indiana Code section 36–7–4–1009 provides for the trial court to render judgment on the "legality of the decision of the board."

conclusions are erroneous, as is its ultimate conclusion that the decision of the BZA "regarding the [Nieten]s' property and their use of the same is illegal." (App.15). However, we find that all of the BZA's proffered issues and arguments are subsumed by the threshold issue of whether the Ordinance prohibits the Nietens' use of their accessory building as a guesthouse for occasional visitors.

 Zoning ordinances are enacted for the purpose of promoting the health, safety, morals, or general welfare of a community by regulating the use and development of land. *Evansville Outdoor Advertising, Inc. v. Bd. of Zoning Appeals of Evansville and Vanderburgh County,* 757 N.E.2d 151, 160 (Ind.Ct.App.2001), *trans. denied.* The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas. *Ragucci v. Metropolitan Development Comm'n.,* 702 N.E.2d 677, 679 (Ind.1998). A board of zoning appeals considers and determines appeals from and "shall review" the determinations made by an administrative official in relation to "the enforcement of" properly adopted zoning ordinances. Ind.Code § 36–7–4–918.1. The board is also authorized to approve or deny special exceptions, special uses, contingent uses, and conditional uses "from the terms of the zoning ordinance." I.C. § 36–7–4–918.2. "A variance is granted by a zoning authority to afford relief from the strict enforcement of a zoning ordinance, and permits a use of the property in question which the ordinance otherwise forbids." 30 I.L.E. *Zoning* § 57 (2000) (citing *Boffo v. Boone County Bd. of Zoning Appeals,* 421 N.E.2d 1119 (Ind.Ct.App. 1981)).

In the interpretation of an ordinance, we apply the same rules that govern the construction of a statute. *Ragucci,* 702 N.E.2d at 681. Words are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the ordinance itself. *Id.* If the legislative intent is clear from the language of the statute, the language prevails and will be given effect. *Id.* Further, the construction of a zoning ordinance is a question of law. *Lucas Outdoor Advertising, Inc. v. City of Crawfordsville, Indiana Board of Zoning Appeals,* 840 N.E.2d 449, 452 (Ind.Ct.App. 2006), *trans. denied.* When we review the decision of a board of zoning appeals "on an issue of law, no deference is afforded the BZA, and reversal is appropriate if an error of law is demonstrated." *Id.* at 453.

The Ordinance is organized in Articles. Article 3 concerns Agriculture Districts, specifying four such different classifications. Two of the fifteen "permitted uses" for an A–2 agricultural district[7] are "single family dwellings" and "accessory buildings as related to ... single family residential use." Ordinance, Art. 3, A, § 2(b)(2) and (6). The Ordinance defines a "dwelling" as "a building or portion thereof on a permanent foundation, used primarily as a place of abode for one or more human beings, but *not any facility normally providing housing for a period of under 30 days.*" Ordinance, Art. 2, § 1 (emphasis added). An "accessory building" is defined as "a subordinate building located on the same lot with the main building ... which is incident to ... the main building." *Id.* "Use specifications" for agricultural districts are found in Article 3, C, and include that "accessory buildings are permitted in all [agricultural] districts." Ordinance, Art. 3, C, § 5. Article 18 of the Ordinance concerns "administration," the final provision of which is entitled "miscellaneous specifications" and includes the following:

---

7. As indicated earlier, the Nietens' property is zoned A–2.

"a. Use. No building or land shall be used and no building shall be erected, reconstructed or structurally altered, which is arranged, intended or designed to be used for any purpose other than a use which is permitted and specified in a district in which such a building or land is located.

\* \* \*

c. Lots. Every building hereafter erected shall be located on a lot. In no case shall there be more than one principal building used for residential[8] purposes, and its accessory buildings, located on one lot. . . ."

Ordinance, Art. 18, C, § 1. Finally, a "variance" is defined as "[a] modification of the specific requirements of this ordinance which may be granted by the board. . . ." Ordinance, Art. 2, § 1.

■ The BZA argues that the Nietens were barred from raising, and the trial court was precluding from finding, that the building was not prohibited by the Ordinance because they did not appeal the October 2004 decision by the BZA. We cannot agree. As noted above, the BZA "shall review" determinations by the director on "the enforcement of" properly adopted zoning ordinances. I.C. § 36–7–4–918.1. Not only was the determination by the director that the Nietens' building violated the Ordinance an issue before the BZA in October of 2004, that determination was necessarily before the BZA in July of 2005, when it considered the Nietens' request for a variance—inasmuch as the Ordinance expressly defines a "variance" as a "modification *of the specific requirements of this ordinance.*" Ordinance, Art. 2, § 1 (emphasis added).

■ The BZA further argues that the July 19, 2005 denial by the BZA of the Nietens' application for a variance was the "only issue" before the trial court, BZA's Br. at 8, and that "the simple denial of an application to vary a zoning ordinance is never an illegal act." BZA's Reply at 2. We have found that whether the accessory building was a violation of the Ordinance remained an issue before the BZA inasmuch it was considering whether to grant a variance—which is only required for a *modification* of the specific requirements of the Ordinance. As the BZA correctly notes, whether to grant a variance is a matter within the discretion of a board of zoning appeals. *See Metropolitan Bd. of Zoning Appeals v. Lane,* 786 N.E.2d 1162, 1167 (Ind.Ct.App.2003), *trans. denied; Snyder v. Kosciusko County Bd. of Zoning Appeals,* 774 N.E.2d 550, 554 (Ind.Ct.App. 2002). However, the variance is "a dispensation to permit a property owner to use his property *in a manner forbidden* by the zoning code," and that discretion is "to approve or deny a variance *from the terms*" of the zoning code. *Lane,* 786 N.E.2d at 1167 (emphasis added). The BZA cites no case for the proposition that it is "never an illegal act" for a board to deny a variance when one is not needed "to vary an ordinance." *Id.* Thus, if the Ordinance does not prohibit the guesthouse, then no application to vary a zoning ordinance was necessary.

The BZA also draws our attention to the following two miscellaneous specifications:

"a. Use. No building or land shall be used and no building shall be erected, reconstructed or structurally altered, which is arranged, intended or designed to be used for any purpose other than a use which is permitted and specified in a

---

8. "Residential purposes" is not defined in the Ordinance; nor is "residence." However, as explained above, the Ordinance does define "dwelling."

district in which such a building or land is located.

\* \* \*

c. Lots. Every building hereafter erected shall be located on a lot. In no case shall there be more than one principal building used for residential purposes, and its accessory buildings, located on one lot...."

Ordinance, Art. 18, C, § 1. The BZA argues that the foregoing expressly forbids the existence of "[t]wo (2) structures that are designed to be used as residence ... on one (1) lot." BZA's Br. at 10. The argument fails to acknowledge the complete language of the latter provision, namely that no "more than one principal building used for residential purposes, *and its accessory* buildings" may be located on one lot. Ordinance, Art. 18, C. § 1 (emphasis added). Therefore, we do not find this argument persuasive on the question of whether the Ordinance forbids the existence of the building.

As the trial court properly noted, the Ordinance defines a "dwelling" as *not* including a "facility normally providing housing for a period of under 30 days." Ordinance, Art. 2, § 1. Further, the Ordinance defines an "accessory building" as a "subordinate building located on the same lot with the main building ... which is incident to ... the main building." *Id.* The Nietens' property is zoned A–2. The Ordinance provides that in the A–2 agricultural district, both "single family dwellings" and "accessory buildings as related to ... single family residential use" are "permitted uses." Ordinance, Art. 3, A, § 2(b)(2) and (6). The Nietens' accessory building was one to provide housing for less than thirty days, and it was both incident to and related to their use of their main building— their single family residential dwelling. Therefore, it was consistent with those

provisions of the Ordinance. Further, as a guesthouse for temporary visitors, the building was not "arranged, intended or designed to be used for any purpose other than a use ... permitted and specified" in the A–2 district, to wit: the single family dwelling and accessory building related to single family use. Ordinance, Art. 18,C, § 1. Moreover, there was not "more than one principal building used for residential purposes and its accessory building[ ]" on the Nietens' lot. *Id.* Accordingly, as the trial court concluded, the Ordinance does not prohibit the existence of the guesthouse.

The BZA "was mistaken as a matter of law because the undisputed facts" establish that the existence of the guesthouse does not violate the Ordinance. *Metropolitan Bd. of Zoning Appeals v. Avis Rent A Car System, Inc.,* 575 N.E.2d 33, 36 (Ind. Ct.App.1991). Therefore, the judgment of the BZA "was illegal and the trial court properly reversed that decision." *Id.*

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.