Michael S. DEISS, Judith E. Novotny, and Stacy J. DeHart, Appellants–Petitioners,

v.

BOARD OF ZONING APPEALS OF BOONE COUNTY, Indiana, Calin Properties, Inc., and Greenhouse Development, LLC, Appellees–Respondents.

No. 06A01–0910–CV–484.

Court of Appeals of Indiana.

April 23, 2010.

George H. Abel, II, Zionsville, IN, Attorney for Appellants.

Kent M. Frandsen, Parr Richey Obremskey Frandsen & Patterson, Lebanon, IN, Attorney for Appellee Greenhouse Development, LLC.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Michael S. Deiss, Judith E. Novotny, and Stacy J. DeHart ("Petitioners") appeal the trial court's order affirming the decision of the Board of Zoning Appeals of Boone County ("BZA") that granted certain variances to Greenhouse Development, LLC ("Greenhouse").

We affirm.

### ISSUE

Whether the trial court erred in affirming the BZA's decision.

### FACTS

Greenhouse owns an approximately 12.4 acre site in Boone County. The site is subject to the Boone County Zoning Ordinance, and its U.S. Highway 421–Michigan Road Corridor Overlay District Ordinance. In 2007, Greenhouse initiated action with Boone County to rezone and develop the property.

On July 7, 2008, the Boone County Board of Commissioners enacted Ordinance 2008–08, which rezoned the site from agricultural to a combination of 8.3 (road frontage) acres "Local Business" and the adjoining 4.1 acres "Professional Business." Greenhouse's App. 61. The rezoning ordinance included various conditions of commitment, including additional buffer areas, prohibited uses, building locations, lighting, signing, and parking. One specific commitment, articulated in the "Other Restrictions" section, stated as follows:

> No exterior loudspeakers or exterior audio devices shall be permitted within the Project Site except for those customarily associated with drive-thru facilities or that are required by code or other government or legal requirement (*e.g.,* fire alarms).

*Id.* at 56.

On August 15, 2008, Greenhouse submitted an application seeking, *inter alia,* five variances "to permit customer vehicle drive-thru lanes in accessing several retail buildings in the development." Petitioners' App. 206.[1] Public hearings were held by the BZA on October 22 and December 17, 2008. The BZA heard testimony and received evidence, including depictions on the site plan of the locations of the drive-thru lanes Greenhouse requested. At the conclusion of the latter hearing, the BZA denied the Greenhouse variance that was requested "to permit a drive-thru lane for Buildings 1 and 2"; and it *granted* variances

– to permit a drive-thru lane for Building 4 subject to the conditions that there be only one (1) drive-thru lane for the building, . . . ;[2]

– to permit drive-thru lanes for Buildings 5 and 6 subject to the conditions that a maximum of three (3) drive-thru lanes per building be permitted

---

**1.** On that same date, Greenhouse applied for a special exception, as required by Ordinance 2008–08, for a drugstore use. The BZA approved the special exception requested for the drugstore at the same time that it approved the challenged variances; Petitioners did not seek judicial review of that decision.

**2.** "Double lanes" had been requested "to serve Building 4." Petitioners' App. 210.

and only so long as a bank occupies the buildings, . . . ;[3] and

– a single drive-thru lane for building 7.[4]

*Id.* at 207, 208. For each granted variance, the BZA specified the included conditions "[1] that the buffering . . . be completed in accordance with the agreement with Countrywood neighbors, and [2] that the building location and drive-thru . . . be in the same general vicinity as shown on the site plan presented." *Id.* at 208.

The BZA found that "drive-thru facilities"[5] were among twenty-nine "excluded uses in the Overlay District provisions of the Zoning Ordinance," but that "the term" itself was "not found" in the "global list of uses regulated by the Ordinance," leading it to find this "an inconsistency which [the BZA] believe[d] . . . within its province to construe and reconcile." *Id.* at 211. It noted that "drive-thru facilities" was a term not "defined in the ordinance," but that the Ordinance had defined "use" as "the 'specific purpose[s] for which land or a building is designated, arranged, intended or for which it is or may be occupied or maintained.'" *Id.* The BZA further noted that throughout Greenhouse's "extended period" of interaction with the BZA, Greenhouse had "made clear its intention to utilize drive-thru lanes for some retail buildings," and noted that despite many "voluntary commitments" by Greenhouse and "conditions imposed by the Board of Commissioners, no commitment or condition prohibited drive-thru facilities." *Id.* at 212. The BZA noted the express reference in the rezoning ordi-

nance to exterior audio devices "of the type 'customarily associated with drive-thru facilities,'" but that nothing had "prohibited Greenhouse from seeking variances for customer drive-thru lanes." *Id.* Finally, the BZA concluded that "drive-thru lanes d[id] not comprise a designated use under the Ordinance, and . . . that the regulation of these lanes constitute[ ] a development standard associated with a particular use, (*i.e.*, a means for customer access to an authorized use)"; therefore, "if the standards for a development standard variance" were met by Greenhouse, the lanes could "be allowed." *Id.* The BZA then concluded that the "standards [were] met" with respect to each variance granted, in that "neither the public health, safety, morals nor welfare [was] adversely affected"; that "the lanes as located" would "not adversely impact the use or value of neighboring areas"; and that the prohibition of the requested lanes "might impose an unreasonable hardship on Greenhouse" and "would likely materially limit Greenhouse's ability to attract quality retail tenants" to the specific location of the site. *Id.* at 213.

On January 15, 2009, Petitioners filed a petition for judicial review of the BZA approval of the variances. Petitioners argued that the BZA lacked the power to grant the variances. In essence, they argued that the BZA's decision was tantamount to granting to Greenhouse a variance from a "use" or classification.

On August 31, 2009, the trial court entered its judgment. It found that the "provision of the Boone County Zoning

---

**3.** "Four lanes" had been requested "to serve Building 5 (free-standing bank)," and "[f]our lanes to serve Building 6 (free-standing bank)." Petitioners' App. 210, 211.

**4.** Only "a single lane" had been requested "to serve Building 7." Petitioners' App. 211.

**5.** The phrase used in the Overlay Ordinance is "drive-through facilities." Elsewhere, however, *e.g.*, in the Rezoning Ordinance, the BZA's order and the trial court's order, the phrase begins with "drive-thru." We use the spelling found in the source when referring to a source, but otherwise use "drive-through."

Ordinance listing 'drive-thru facilities' as an 'excluded use'" in the overlay district was "ambiguous as written." *Id.* at 131. The trial court noted that the term "drive-thru facilities" was "not defined in the Ordinance" and "not listed as a use in the Table of Authorized Uses." *Id.* It found that a "lane allowing access to a drive-up window of a retail business is a means of accessing a retail use, rather than a use in and of itself." *Id.* at 131–32. The trial court concluded that

> the attempted limitation or regulation of such drive-up lanes [was] more properly characterized as a development standard (which the BZA has the lawful authority to grant variances from [pursuant to] Ind.Code § 36–7–4–918.5[6]) as opposed to a use classification (which the BZA may not lawfully grant variances from [pursuant to] Ind.Code § 36–7–4–918.3[7]).

*Id.* at 132. The trial court also concluded that

> [c]onstruing the County's comprehensive zoning ordinance in its entirety, including the ordinance adopted by the Boone County Commissioners changing the zoning classification of the property in issue, in favor of the free use of property with all ambiguities resolved in favor of Greenhouse, [it] believe[d] that the provision in issue should not be read as to

require reversal of the BZA's grant of the variances in this matter,

and that

> [t]he BZA's grant of some variances to Greenhouse, subject to certain terms and limitations spelled out in the BZA order [was] not arbitrary, capricious or illegal.

*Id.* Finding a "reasonable basis ... for the approvals," it affirmed the BZA's decision. *Id.*

## DECISION

### I.

■ The parties agree that the construction of a zoning ordinance is a question of law. *See Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind.2004). Petitioners reminds us that when we review such a question of law, we owe no deference to the trial court's legal conclusions. *See Board of Comm'rs v. Town & Country Utils., Inc.*, 791 N.E.2d 249, 253 (Ind.Ct.App.2003). However, our Supreme Court has held that a planning agency's "construction of its own ordinance is entitled to deference." *Story Bed & Breakfast*, 819 N.E.2d at 66. Further, because zoning ordinances are in derogation of the common law, they "should, whenever ambiguous, be construed in favor of the property owner." *Id.*

---

6. Indiana Code section 36–7–4–918.5(a) provides as follows that a board of zoning appeals "shall approve variances (such as height, bulk, or area) of the zoning ordinance," with such approval requiring
   a determination in writing that:
   (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
   (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

(3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the "practical difficulties" standard proposed by this subdivision.

7. Indiana Code section 36–7–4–918.3 provides that a board of zoning appeals may *not* "grant a variance from a use district or classification under the area planning law."

Zoning ordinances are enacted for the purpose of promoting the health, safety, morals, and general welfare of a community by regulating the use and development of land. *Hamilton County Plan Comm'n v. Nieten,* 876 N.E.2d 355, 359 (Ind.Ct.App.2007), *trans. denied.* The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas. *Id.*

The zoning ordinances applicable to the Greenhouse site are the overall Boone County Zoning Ordinance, the Overlay Ordinance, and Rezoning Ordinance No. 2008–08. The Boone County Zoning Ordinance contains a lengthy listing of "uses," but none for a drive-through facility. Further, it states that "[i]n interpreting and applying the provisions" of the Zoning Ordinance provisions, "they shall be held to be the minimum requirements for the promotion of the public health, safety, comfort, morals, convenience, and general welfare." Greenhouse's App. 63. The Overlay Ordinance states that one of the "excluded uses" is the "use[ ]" of "Drive-through facilities," but it does not define such an entity or provide any further discussion thereof. Petitioners App. 4. The Overlay Ordinance also contains a statement of purpose: "to promote and protect the public health, safety, comfort, convenience and general welfare by providing for consistent and coordinated treatment of the property" in the overlay district. Petitioners' App. 3. Finally, as noted above, the Rezoning Ordinance noted that loudspeakers or exterior audio devices "customarily associated with drive-thru facilities" were not prohibited on the rezoned Greenhouse site. Greenhouse's App. at 56. Whether the BZA's grant of the variances is erroneous as a matter of law must be determined in the context of these provisions.

Petitioners first argue that the "the drive-through facilities requested" as variances cannot be characterized as "something other than a use classification" because the Overlay Ordinance expressly "prohibited" twenty-nine "excluded uses"—one of which is "Drive-through facilities." Petitioners' Br. at 6; App. at 4. Such inclusion, they argue, evidences "the intent of the legislative body" that "drive-through facilities" constitute a use classification. *Id.* at 7. We are not persuaded.

The Overlay Ordinance itself contains no further discussion of "drive-through facilities," and no definition therefor. The Boone County Zoning Ordinance includes eleven pages of "authorized uses," consisting of more than two hundred "uses permitted." Greenhouse's App. 66. There is no reference to a drive-through facility use. The Ordinance's eighteen pages of definitions do not specifically include "drive-through facility"; but as noted by the BZA, it defines a "use" as follows:

> The specific purposes, for which land or a building is designated, arranged, intended or for which it is or may be occupied or maintained.

*Id.* at 167.

The BZA concluded that the drive-through lanes for which Greenhouse sought a variance were not "a designated use under the Ordinance." Petitioners' App. 212. Given the provisions noted above, we cannot conclude that as a matter of law the BZA erred in this regard and impermissibly granted the variances.

## II.

Petitioners next argue that we should find the BZA to have erred as a matter of law when it failed to give the "term 'drive-through facilities' . . . its plain and ordinary meaning." Petitioner's Br. at 8. They assert that "the term 'facility' is often synonymous with a building or

structure." *Id.* Therefore, they contend, the BZA's characterization of the requested variances as "drive-up lanes" improperly "ignored the plain, ordinary and usual meaning of the term 'drive-through' facilities and disregarded the language intentionally used" in the Overlay Ordinance. *Id.*

We find that in the cited provision ("drive-through facilities"), "drive-through" serves as an adjective—modifying "facilities." Hence, the plain and ordinary meaning of the provision would be buildings, or structures (as asserted by Petitioners) *through which* a vehicle could be driven. According to Greenhouse's application, the design exhibits, and the BZA's decision, the variances sought here were for vehicular lanes alongside a drugstore, two bank buildings, and a coffee-shop building respectively. Thus, we do not find Petitioners' argument in this regard to establish that the BZA's grant of the variances is erroneous as a matter of law.

### III.

■ Finally, Petitioners contend that the BZA "may not characterize the term 'drive-through facilities'" as a development standard because doing so "remove[s] (or ignore[s]) the prohibition on 'drive-through facilities'" in the Overlay Ordinance. Petitioners' Br. 12. This argument, however, was discussed and found unavailing above.

As did the BZA and the trial court, we find that when taken as a whole, the ordinances are ambiguous regarding whether they strictly forbid any *drive-by* access to buildings. Accordingly, we construe them in favor of the property owner. *Story,* 819 N.E.2d at 66. Moreover, construing them in light of the ambiguity, we must be mindful that zoning regulations are enacted to promote the health, safety, morals, and general welfare of the public, *Nieten,* 876

N.E.2d at 359, and that the BZA expressly found that the variances granted did not adversely affect "the public health, safety, morals [ ] or welfare" and met the other statutory standards. Petitioners' App. 213. With changing demographics that reflect an aging population and public policies that recognize mobility limitations, *see, e.g.,* Ind.Code § 9–18–22–1 *et seq.* (license plates for persons with disabilities); and I.C. § 9–14–5–1 *et seq.* (parking placards for persons with physical disabilities), access from a vehicle may address such concerns, and the allowance of such lanes may be found consistent with promoting the public welfare.

We find that taken as a whole, the ordinances do not prohibit a vehicular lane allowing access to the drive-up window of a business building—with such constituting a means of accessing a retail use. Therefore, we find no error here.

Affirmed.

BAKER, C.J., and CRONE, J., concur.