Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 22 2012, 8:48 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID C. GRUPENHOFF**
Thomas M. Barr & Associates
Nashville, Indiana

ATTORNEY FOR APPELLEES:

**DAVID B. SCHILLING**
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MOONDANCE ENTERPRISES, LLC, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 07A01-1201-PL-5 |
| | ) | |
| BROWN COUNTY, INDIANA, ET AL., | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |
| | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Bruce S. Markel, III, Special Judge
Cause No. 07C01-0907-PL-414

**October 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Moondance Enterprises, LLC, appeals the trial court's determination that it violated the Brown County Zoning Ordinance ("BCZO") by operating its property as a tourist home. Moondance contends that it operated the property as a lodge or private club, which is permitted by the BCZO. Moondance also argues that the penalty imposed by the trial court is excessive. We conclude that the trial court properly rejected Moondance's argument that it operated the property as a lodge or private club. We do find, however, that the penalty imposed for Moondance's violation of the BCZO was excessive. We affirm in part and reverse in part.

## Facts and Procedural History

Moondance is a real-estate development company that owns and operates a number of tourist homes in Brown County, Indiana. In October 2007, Moondance purchased property located on Lanam Ridge Road. The Lanam Ridge property ("the property") is located in a "secondary residence" or "R2" zoning district, according to the BCZO. The BCZO does not allow tourist homes in R2 districts.[1] The BCZO defines a tourist home as "a building in which not more than 5 guest rooms are used to provide or offer overnight accommodations to transient guests for compensation[.]" Appellee's App. p. 30.

Moondance's original intent was to buy the property, improve it, and then sell it. However, even after performing significant renovations, Moondance was unable to sell the property and began considering alternative uses. In August 2008, Moondance started

---

[1] Tourist homes are permitted in R2 districts only by special exception. It is undisputed that Moondance did not seek such an exception for this property. Moondance has, however, obtained a number of tourist-home exceptions for other nearby properties. *See* Tr. p. 16.

2

advertising the property, which it named "The Rancho Valle Lodge," on the internet as a vacation rental. From October 2008 to April 2011, Moondance rented the property 178 times for a total of 490 nights. Appellant's App. p. 22. The length of guests' stays ranged from one to seven nights. *Id.* The average number of bedrooms occupied during this time period was 2.6. *Id.* at 23.

In October 2008, the Brown County Area Board of Zoning Appeals ("BZA") received a complaint about Moondance's use of the property. After an investigation, the BZA notified Moondance that it had concluded the property was being used as a tourist home. After meeting with Moondance's manager, Doug Tracey, the BZA maintained that the property was being used as a tourist home in violation of the BCZO, and it instructed Moondance to cease using the property as a tourist home. The BZA also notified Moondance of its right to appeal its determination to the BZA within ten days. Moondance did not appeal and continued advertising and using the property as a vacation rental.

In July 2009, Brown County filed an action in Brown Circuit Court seeking to enjoin Moondance's use of the property as a tourist home. A trial was held in October 2011. At trial, the parties stipulated to the facts underlying the dispute, including the property's rental history. However, Moondance argued that it was using the property as a lodge or private club, which is permitted in a R2 district. *See* Appellee's App. p. 36. As support for this claim, Doug Tracey pointed to a number of distinctions between the property at issue and a nearby tourist home also owned by Moondance, Loretta's Cabin:

Q    [W]hat goes on . . . at the Lodge at Rancho Valle?

3

A    Club members are offered the opportunity to spend the night or as many nights as they like for . . . a fee.

            *      *      *      *      *

Q    Are the facilities and the amenities offered at Loretta's Cabin essentially the same as those offered at the Lodge at Rancho Valle?

A    No.

Q    And, what's the difference?

A    The difference is that the . . . at Rancho Valle there's a . . . that the five percent donation of the . . . of the stay is made to local [charities].   They receive an automatic discount on future reservations, dinner certificate to local restaurants[,] and full use of the entire sixty acres of the property.

            *      *      *      *      *

A    Excuse me, there's actually a fifth [difference], which is the exclusive discounts, offers made through . . . through our website. So, they occasionally receive an offer that other clients would not for purposes of . . . of staying at Rancho Valle.

Tr. p. 23-25 (formatting altered) (ellipses in original).

Brown County maintained the property was being used as a tourist home in violation of the BCZO. The parties submitted proposed findings of fact and conclusions of law in support of their respective positions. Two months later, the trial court entered its own findings of fact and conclusions of law and ruled that Moondance was indeed using the property as a tourist home in violation of the BCZO. *Id.* at 51. In reaching this conclusion, the trial court rejected Moondance's definition of "lodge" and concluded that it had not established it was a private club.

The trial court first explained that there were numerous dictionary definitions for the term "lodge," but that Moondance contended that it meant only "a resort hotel." *Id.*

4

The court pointed out, however, that the BCZO expressly prohibited hotels in R2 districts, and accepting this definition would amount to "interpreting a zoning ordinance to permit a use that is expressly prohibited . . . ." *Id.* The court further explained that Moondance's interpretation of the term "mixes two different types of land uses [lodging and residential use] into one land use category." *Id.* Because "zoning ordinances group similar or compatible classes of uses together," adopting Moondance's definition of "lodge" would lead to absurd results.

The trial court then set forth another dictionary definition of "lodge"—"the meeting place of a branch of an organization [such as] a fraternal organization." *Id.* (citing Webster's Dictionary 702 (9th ed. 1986)). Similarly, the term "club" could be defined as "an association of persons for some common object usu[ally] jointly supported and meeting periodically . . . the meeting place of a club." *Id.* The common definition of club, the trial court noted, "does not include an overnight lodging component." *Id.* The court explained that "interpreting 'lodge' to refer to the meeting place of an organization makes the 'lodge or private club' use consistent throughout." *Id.* That is,

> Each component of the use term relates to a meeting place. Meeting places have similar land use impacts and are logically grouped together. Lodging facilities tend to have different impacts on surrounding properties than meeting rooms. Accordingly, transient lodging uses (hotels, bed and breakfasts, tourist homes, etc.) are grouped together . . . . [A]n ordinance provision must be interpreted in context with the other ordinance provisions in order to ascertain its meaning and effect.

*Id.* (citations omitted) (formatting altered).

Finally, the trial court explained that the differences between the property at issue and nearby Loretta's Cabin pertained not to how the property was being used, but how it

5

was being marketed or offered online. The BCZO, however, was concerned only with how property was being used, or, more broadly, "the purpose for which the building is designed, arranged, or intended, or for which it is occupied or maintained." *Id.* at 52. Therefore, the distinctions were not persuasive.

The court enjoined Moondance from further use of the property as a tourist home. The court also found that Moondance had committed a violation of the BCZO on each day the property was offered as a vacation rental from October 10, 2008, through October 6, 2011, for a total of 1091 violations. The court fined Moondance $110 for each violation, for a total fine of $120,010.

Moondance now appeals.

## Discussion and Decision

On appeal, Moondance contends that the trial court erred when it rejected Moondance's argument that the property was used as a lodge or private club. Moondance also argues that the penalty imposed by the trial court is excessive.

## I. Zoning

Moondance first contends that the trial court erred when it rejected Moondance's argument that the property was used as a lodge or private club. Where, as here, the facts are not in dispute, and we are charged only with interpreting an ordinance, the appeal presents a pure question of law reserved for the courts. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). When the issue on appeal is a pure question of law, we review the matter de novo. *Id.*

Because the parties agree about the underlying facts, our focus in resolving their claims is interpretation of the BCZO. As an initial matter, Chapter 1, Section 2 of the BCZO defines tourist home as "a building in which not more than 5 guest rooms are used to provide or offer overnight accommodations to transient guests for compensation[.]" Appellee's App. p. 30. The section does not define lodge or private club. *Id.* at 28-31. Chapter 3 sets forth "authorized uses" of property based on the district in which the property is located. The chapter clearly states that lodges or private clubs are permitted in R2 districts, while tourist homes are not.[2] *Id.* at 36-37.

The heart of the parties' dispute is how to characterize Moondance's use of the property. Moondance contends that its use of the property satisfies the definition of a lodge or private club, and because the BCZO does not define lodge or private club, Moondance offers definitions for these terms. We must determine whether the property fits within these definitions in light of the language and purpose of the BCZO.

Zoning ordinances are enacted to promote the health, safety, morals, and general welfare of a community through regulation of the use and development of land. *Hamilton Cnty. Plan Comm'n v. Nieten*, 876 N.E.2d 355, 359 (Ind. Ct. App. 2007), *trans. denied.* "The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas." *Id.* We use the same rules to interpret ordinances as we do when interpreting statutes. *Siwinski*, 949 N.E.2d at 828. "If a statute contains ambiguity that allows for more than one interpretation, it opens itself up to judicial construction to effect the legislative intent." *Id.*

---

[2] With limited exception. *See id.*

7

"Normally, terms undefined within a statute must be given their plain, ordinary, and usual meaning." *Metro. Dev. Comm'n of Marion Cnty. v. Villages, Inc.*, 464 N.E.2d 367, 369 (Ind. Ct. App. 1984). We presume the legislature intended logical application of the language used in a statute so as to avoid unjust or absurd results. *Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 873 N.E.2d 61, 66 (Ind. Ct. App. 2007).

Moondance acknowledges that there are numerous definitions of both "lodge" and "club." However, the definition of "lodge" it adopts—"a resort hotel"—is at odds with the express language of the BCZO, which prohibits hotels in R2 districts. Adopting this definition would, as the trial court acknowledged, amount to "interpreting a zoning ordinance to permit a use that is expressly prohibited . . . ." Appellant's App. p. 51. We cannot imagine that the zoning authorities in Brown County intended such an illogical result. Moreover, the purpose of zoning ordinances is to confine certain classes of land use to certain areas. We cannot conclude that the trial court erred in rejecting a definition at odds with this purpose.

Further, while Moondance defined "club" similarly to the trial court, the facts it relied upon in attempting to satisfy this definition—differences between the property and a nearby tourist home, including charitable donations and exclusive discounts—pertain to how the property was marketed, rather than how it was used. The BCZO is concerned with the "development and use" of land in Brown County. Appellee's App. p. 28. For this reason, marketing strategies or other tactics used to attract guests are not persuasive when determining how Moondance used the property. We conclude that the trial court

8

did not err by rejecting Moondance's argument that the property was operated as a private club or lodge.[3]

## II. Penalty

Moondance also contends that the trial court erred in determining what penalty to impose upon it for violating the BCZO. Reasonable penalties may be imposed by ordinances and statutes when authorized in order to induce compliance with their terms. *Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin Cnty. Comm'rs*, 507 N.E.2d 1001, 1009 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*. Whether a penalty is reasonable or excessive must be determined in light of the particular circumstances in a given case. *Id.* Moondance argues that the penalty here is disproportionate to the offense, its violation of the BCZO. We agree.

In determining that the penalty here is unreasonable, we note that Moondance purchased the property and renovated it, increasing the value of the property. While we recognize that harm was caused by the improper operation of the property as a tourist home, at most this harm amounted to a disruption or disturbance to the property's neighbors when the property was occupied. Moondance did not utilize the appellate procedure provided by the BZA, but contested this matter for the first time before the trial

---

[3] We note that we have previously considered the meaning of "private club," albeit in a different context. In *Long v. State*, another panel of this Court refused to identify Regina's House of Dolls, where nude dancers performed, as a private club. 666 N.E.2d 1258, 1260-62 (Ind. Ct. App. 1996). We did so because "Regina's is not a bona fide private club in that it lacks any attributes of self-government and member ownership traditionally associated with private clubs." *Id.* at 1261 (citing *Daniel v. Paul*, 395 U.S. 298, 301 (1969)). Notably, Regina's members did not receive any information about business operations, had no ownership interest in the business, and had not adopted "articles or a constitution or established any by-laws which govern membership." *Id.* Although this was not "an exclusive or an exhaustive list of attributes associated with a private club," we nonetheless concluded that Regina's was not a private club.

court. While a fine was warranted to induce compliance with the BCZO, based upon these facts we conclude that the fine levied by the trial court was excessive.

We remand this cause to the trial court with instructions to enter an order that Moondance be fined proportionally to the harm caused—$55 for each of the 178 occasions that Moondance rented out the property, or a total of $9,790. *See Siwinski*, 949 N.E.2d at 832 (fining property owners for each occasion on which they rented the property in violation of local zoning ordinance).

Affirmed in part, and reversed in part.

MATHIAS, J., and BARNES, J., concur.